Byron P. HARDINGE, Appellant,

v.

The STATE of Texas, Appellee.

No. 46541.

Court of Criminal Appeals of Texas.

Oct. 31, 1973.

Gerald H. Goldstein, San Antonio, for appellant.

Ted Butler, Dist. Atty., Gordon V. Armstrong and Antonio G. Cantu, Asst. Dist. Attys., San Antonio, Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ODOM, Judge.

This appeal is from a conviction for the offense of possession of marihuana; punishment was assessed at two years, probated.

By his sole ground of error, appellant contends that the trial court erred in overruling his motion to suppress for the reason that he was illegally arrested and any search incident thereto was the product of such illegal arrest. We agree and the cause is reversed.

The record reflects that on October 24, 1971, Louis Gonzales, a reserve officer with the Bexar County Sheriff's Office, was working as a security guard at the Sigmore Distributing Corporation in San Antonio. The Sigmore Distributing Corporation is apparently composed of a service station, a radio station, and some main offices of Sigmore which are in close proximity to each other.

At approximately 1:00 A.M., on the night in question, the appellant appeared on the premises. Gonzales stated that he first saw appellant walk up to the water fountain and get a drink of water. The water fountain is located on the outside of the service station in an area lighted by some night lights. After appellant had finished drinking, he approached Gonzales, who was at that time near a shack on the service station property. Gonzales asked appellant if he could help him, to which appellant replied by asking for directions to Fort Sam Houston. Appellant was then given directions to Fort Sam Houston and Gonzales also told him that he should get a cab, as it was a long way. When appellant replied that he did not have any money, Gonzales told him that he could not stay around there because the place was closed. Appellant replied "Okay" and went over to Houston Street, where Gonzales had directed him to go. Gonzales then forgot about appellant, got back in his car and started reading a book.

A short while later one of the disc jockeys from the radio station walked up to Gonzales' car and stated: "Say, there is a character over there, a suspicious character over in front of the window at the station." Gonzales then drove his car to the front of the radio station to check. He observed appellant standing in front of the large picture window just looking in. When Gonzales asked appellant what he was doing there, appellant sort of grinned. Gonzales then asked appellant for his identification and appellant promptly gave him

his military identification card. Next, Gonzales asked appellant how long he had been in, and appellant replied, "Oh, eight or nine weeks." After Gonzales had noticed that appellant's I.D. card had an April date on it, he stated that he then became suspicious. Appellant replied to Gonzales' question as to whether he was on leave by stating, "Well, you can call it that." Next, appellant asked Gonzales whether he was under arrest, to which Gonzales replied, "No" but that he was going to call the city because appellant did not make "heads or tails" with the questions he was asking him. In response to Gonzales' question about his leave papers, appellant stated that he had thrown them away because he didn't care about the army. Gonzales then called the San Antonio Police Department and told them that he had a "suspicious person" for them.

Officer DeHaven, of the San Antonio Police Department, arrived on the scene shortly thereafter in response to Gonzales' call. DeHaven asked appellant if he was in the military to which he replied "You might say that." Next DeHaven called the military to see if appellant was AWOL and, upon finding out he wasn't, he called the military police and arranged to meet them so as to turn appellant over to them.[1] While DeHaven was driving appellant to meet the military police, he asked him some questions. Appellant would answer some of the questions or would nod his head, or would sometimes fail to give an answer at all.[2] By the time DeHaven arrived at the place where he was to meet the MP's, he had concluded that appellant was drunk and should be booked. After DeHaven had arrived at the designated scene, appellant was placed in the MP car and searched by DeHaven. A small bag containing some marihuana was found in appellant's right front pocket.

■ The state must show the existence of probable cause at the time a warrantless

arrest or search is made and the existence of circumstances which made the procuring of a warrant impracticable in order to justify a warrantless arrest or search. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1924); Stoddard v. State, 475 S.W.2d 744 (Tex.Cr.App.1972). The question of whether a warrantless arrest or search is constitutionally valid can only be decided in terms of the concrete factual situation presented by each individual case. Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1967); Jones v. State, Tex.Cr.App., 493 S.W.2d 933; Brown v. State, Tex.Cr.App., 481 S.W.2d 106.

In the case at bar, it is disputed as to when the arrest of appellant took place. The state contends that appellant's arrest took place after DeHaven had determined that appellant was drunk and had arrived at the designated place to meet the MP's. Appellant contends that the arrest took place when DeHaven placed him in his police car.

■ Gonzales testified on direct examination to the following:

"Q. All right. Now, did he appear normal to you or seem a little funny?

A. Well, he seemed a little funny. Just like if he didn't give a darn what I was asking him. So, you know, what I did—well, I remember him saying, 'Am I under arrest?' And I told him, 'No, you are not under arrest, but I am going to call the City, they are more familiar, because you just don't make heads or tails with the questions I'm asking you.' And, I asked him for his leave papers and he said, 'I threw them away. I don't care about the Army anyway.' *That is the only*

---

1. The record is silent as to why appellant was to be turned over to the military police.

2. It should be noted that DeHaven testified that no Miranda warnings were given appellant prior to any questioning.

*reason I held him.* Then, I called the City." (Emphasis supplied.)

Article 15.22, Vernon's Ann.C.C.P., provides:

*"A person is arrested when he has been actually placed under restraint or taken into custody by an officer or person executing a warrant of arrest, or by an officer or person arresting without a warrant."* (Emphasis supplied.)

It is not the actual physical taking into custody that will constitute an arrest. An arrest is complete whenever a person's liberty of movement is restricted or restrained. See Henry v. United States, 361 U.S. 98, 80 SCt. 168, 4 L.Ed.2d 134 (1959); Woods v. State, 466 S.W.2d 741 (Tex.Cr. App.1971). In the situation at bar, the arrest took place when Gonzales "held" appellant for the San Antonio Police.

The next issue is whether or not Gonzales had authority to arrest appellant without a warrant. Article 14.01, V.A.C. C.P., provides:

"A peace officer or any other person, may, without warrant, arrest an offender when the offense is committed in his presence or within his view, if the offense is one classed as a felony, or as an offense against the public peace."

Article 14.03, V.A.C.C.P., provides:

"Any peace officer may arrest, without warrant, persons found in suspicious places and under circumstances which reasonably show that such persons have been guilty of some felony or breach of the peace, or threaten, or are about to commit some offense against the laws."

Gonzales testified that appellant was in no way committing any crime; that he did not have any fear that appellant was going to commit any crime; and that all he was doing was looking through the radio station's window. He also testified that it was a very large picture window designed to attract the attention of individuals passing by, and that there was a disc jockey on the air in the window appellant was watching.[3] DeHaven testified to substantially the same facts as Gonzales did, except for the additional facts that appellant was polite and didn't give him any trouble.

The United States Supreme Court, in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1967) stated:

"The Fourth Amendment provides that 'the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . .' This inestimable right of personal security belongs as much to the citizen on the streets of our cities as to the homeowner closeted in his study to dispose of his secret affairs. For, as this Court has always recognized, 'No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law.' "

The Supreme Court also stated in Papachristou v. City of Jacksonville, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972):

"We allow our police to make arrests only on 'probable cause,' a Fourth and

---

3. We refer the reader to Rushing v. State, 500 S.W.2d 667 (Tex.Cr.App.1973), where, in a similar type of situation, officers' search of Rushing was held unjustifiable under the suspicious persons statute. In that case defendant and a companion were parked in a pickup truck at 11:45 P.M. in the parking lot of a closed store, but it was established that the young people of the town used the parking lot as a gathering place at night. Similarly, the picture window in the instant case was designed to attract persons to stop and watch the performing disc jockey. In both cases the individual's presence was a common, rather than suspicious, circumstance. The suspicious persons statute does not impose a general curfew, subjecting persons at large after hours to arrest. See also Lara v. State, Tex.Cr. App., 469 S.W.2d 177.

Fourteenth Amendment standard applicable to the States as well as to the Federal Government. Arresting a person on suspicion, like arresting a person for investigation, is foreign to our system, even where the arrest if for past criminality."

We conclude that under the facts in the case at bar Gonzales simply did not have probable cause to arrest appellant at the time in question. Thus, the . evidence seized as a result of the illegal arrest was inadmissible. See Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

The judgment is reversed and the cause remanded.

MORRISON, J., dissenting.