Thomas **MORRIS**, III, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 941–85.

Court of Criminal Appeals of Texas, En Banc.

Oct. 28, 1987.

Charles F. Baird (Court–appointed on appeal only), Michael B. Charlton, Cathy Greene Burnett, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., and Winston E. Cochran, Rusty Hardin and

Karen Zellars, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

WHITE, Judge.

A jury convicted the appellant of felony theft. V.T.C.A., Penal Code Sec. 31.03. Appellant then pled true to the enhancement paragraph in the indictment. The jury assessed the appellant's punishment at 20 years' confinement, and a fine of $740.00.

Before the Court of Appeals, the appellant argued that the warrantless and unlawful nature of his arrest for unauthorized use of a motor vehicle tainted the police's subsequent search of him, which rendered inadmissible the evidence seized by the police during his search. The Court of Appeals decided that it need not address the legality of the appellant's arrest for unauthorized use of a motor vehicle. The Court of Appeals found that, after being arrested and before being searched, the appellant committed the felony offense of escape[1] by running from the police officer who arrested him. The Court of Appeals concluded that since the appellant's escape in the presence of the police officer provided probable cause for the second arrest, the evidence seized subsequent thereto was properly admitted. *Morris v. State*, 696 S.W.2d 616 (Tex.App.—14th Dist.1985).

The appellant sought review by this Court from the decision of the Court of Appeals. As his reason for review, the appellant claims that the holding of the Court of Appeals is in direct conflict with this Court's holding in *White v. State*, 601 S.W.2d 364 (Tex.Cr.App.1980), and the holding in *Snabb v. State*, 683 S.W.2d 850 (Tex.App. 13th Dist.1984).[2] We granted review.

In the appellant's petition for discretionary review, he alleges as his ground for review that the Court of Appeals erred in concluding that the warrantless arrest was justified because the appellant committed the new offense of escape. The State responded by arguing that, under the facts of the instant case, there was a sufficient combination of the assertion of authority by the arresting officer and submission to that authority by the appellant to establish that appellant was arrested and in custody at the time of his escape.

A review of the facts is necessary.

Sergeant R.L. Reed of the Houston Police Department was investigating the alleged theft of a Chevrolet Camaro when he came into contact with the appellant. A confidential informant gave Reed the appellant's name, address and general description, and told Reed that the appellant stole the Camaro. While Reed had the Camaro under surveillance at appellant's apartment complex, a person entered the Camaro and drove off. Reed could not, at first, see who got in the car because his view was temporarily obstructed. Reed followed the Camaro and, at one point, observed the

---

1. See V.T.C.A., Penal Code Sec. 38.07(a)(1).

2. Appellant states that *White*, supra, and *Snabb*, supra, provide a definitive guideline for determining the point of arrest. In *White*, this Court reviewed a conviction for resisting arrest, from which the defendant argued his initial restraint was not an arrest. This Court decided that an arrest in fact did take place, and that it was not necessary for the officer to announce to the defendant he was under arrest. In the course of that discussion, this Court stated that, "Cases determining the 'point of arrest' under this statute (Art. 15.22, V.A.C.C.P.) have concluded that an arrest occurs at the moment that a person's freedom of movement is restricted or restrained." *White*, at 366.

*Snabb*, supra, relied on *White*, supra, to hold that the facts did not support the conclusion that the defendant committed the offense of escape, as set out in V.T.C.A., Penal Code Sec. 38.07(a). The Court of Appeals stated, "we are constrained to hold that appellant's arrest was not complete when she fled from Officer Mitchell. The elements of detention and control were lacking, and appellant refused to submit to the officer's authority.... We conclude that in the instant case appellant's liberty of movement was not restricted or restrained until she was chased and grabbed by Officer Mitchell." *Snabb*, supra, at 851 and 852.
To the extent that the language of *Snabb* is in conflict, it is disavowed.

driver stop, get out of the car, and use a public telephone. Later, as Reed continued to follow the Camaro, the driver became suspicious and executed a U–turn across several lanes of traffic, in an attempt to evade Sergeant Reed. In Reed's words, "He ran from us in a high speed chase and then ran on foot from that vehicle, fled from that vehicle." The driver abandoned the car and successfully eluded the pursuit of the officers. By checking the Vehicle Identification Number of the car, Reed confirmed it was the stolen vehicle for which he was searching.

Later, Sergeant Reed contacted the confidential informant who gave him the information about the appellant's residence. The informant had found a business card left on the front door of the appellant's apartment. The informant told Reed that the card was from a district parole officer, Randy Frisch. Written on the card was a message to the appellant requesting that he come by the District Parole Office for a meeting at a specific time. Reed decided to be there as well, to see if the man who showed up for the meeting was the same man whom he saw drive the Camaro and make the phone call.

While Sergeant Reed was at the parole office, he met Randy Frisch, the appellant's parole officer. When Reed saw the appellant, he recognized him as the driver of the Camaro. At that point, Reed told appellant he was under arrest for unauthorized use of a motor vehicle. What occurred next was the subject of a pre-trial hearing, and is the focus for this dispute on appeal.

The appellant filed a pre-trial motion to suppress the evidence, alleging that Reed lacked probable cause to make the warrantless arrest. Frisch, Reed and appellant all testified at the hearing.

Frisch testified that when appellant came into the parole office, Sergeant Reed told appellant that he was under arrest for unauthorized use of a motor vehicle. He stated that Reed asked the appellant some questions, but did not handcuff the appellant. Frisch testified that the appellant asked him what would happen to his parole because of the arrest. Frisch replied that

nothing would happen to appellant's parole if he wasn't convicted on the case Reed was investigating. Frisch stated that the next thing to happen was the appellant ran from the parole office. Frisch closed by explaining that there was no question in his mind that Reed placed the appellant under arrest prior to his running away from them.

Reed also testified at the hearing. Under questioning by the attorney for the State, the following occurred:

"Q. (Mr. Hardin): When Mr. Morris came in, did you recognize him?

"A. Yes, immediately when he walked through the door, I knew he was one and the same person that ran in that car on the 20th of July.

"Q. As a result, did you place him under arrest?

"A. Yes, sir, I did."

Reed also explained that, after he placed the appellant under arrest, he advised the appellant of his legal warning, "read his rights to him from the blue card", and called for a unit to transport the appellant. He testified that he did not handcuff the appellant because he did not have a pair of cuffs with him.

At that point, the appellant "jumped up and ran out of the office and through the parole office and out the front door," according to Sergeant Reed. After leaving the building, the appellant ran across two parking lots and into an open wooded field. The parking lots were filled with a couple of inches of water and the field was very muddy, due to recent rains. Reed stated that upon entering the field, the appellant "stopped to look back and see if I was coming. He saw me and bolted back into the woods." Reed was able to locate the appellant's hiding place in the field by following his tracks in the mud. At that point, Reed took the appellant back into custody.

The appellant was the last witness to testify at the pre-trial hearing. His defense attorney asked him, at one point, what happened after Officer Reed told him he was under arrest and was taking the

appellant downtown for questioning. The appellant responded as follows:

"After that I sit down—they have a chair in Mr. Frisch's office. I sit on the chair. He kept on asking me questions. I didn't want to answer, keep telling him I want to see a lawyer. He kept talking about if I telling him about the cars he asking me about, it would be easier on me. I didn't say nothing. After that it dawned on me that I was going back to the penitentiary and I'll admit I did run."

This Court recently handed down *Russell v. State*, 717 S.W.2d 7 (Tex.Cr.App.1986), and it controls the resolution of whether the appellant was arrested and in the custody of Sergeant Reed at the time he ran from the district parole office. V.T.C.A., Penal Code Sec. 38.07 sets out the felony offense of escape:

(a) A person commits an offense if he escapes from custody when he is:

(1) under arrest for, charged with, or convicted of an offense;

If the facts support the conclusion that the appellant was in custody when he was placed under arrest for unauthorized use of a motor vehicle, the Court of Appeals reached the proper conclusion. We agree with the Court of Appeals.

In *Russell v. State*, this Court had to resolve whether the defendant was placed under arrest prior to consenting to the search of her home. This Court relied on the analysis of the Supreme Court in *U.S. v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, at 1877, 64 L.Ed.2d 497 (1980):

"We conclude that a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave."

The Court gave several examples of circumstances that could indicate a person was in custody: an attempt by the person to leave, the threatening presence of several officers, the display of a weapon, a physical touching of the person, or the use of language or tone of voice indicating compliance by the person was compelled.

In *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, at 1326, 75 L.Ed.2d 229 (1983), the Court relied on *Mendenhall* to conclude that the circumstances indicated "a show of official authority such that a reasonable person would have believed that he was not free to leave." In *Royer*, the arresting officers asked for, and examined, the defendant's airline ticket and driver's license, they identified themselves as narcotics officers, they told the defendant they suspected him of transporting narcotics, and they requested the defendant accompany them to their office. The officers did all this while retaining the defendant's ticket and driver's license and without indicating in any way that he was free to depart. The Court decided the defendant, at that point, was in the custody of the two officers.

*Mendenhall* and *Royer* indicate the circumstances of a case must be examined in order to decide if a defendant would have reasonably believed that he was not free to leave. We shall apply this standard to the facts of the instant case.

From the record, as discussed above, the following facts are relevant to our inquiry:

1. Sergeant Reed told the appellant he was under arrest, and informed appellant of the offense he was arrested for;

2. Reed informed the appellant of his constitutional rights, as required by *Miranda*, and gave the appellant his legal warning;

3. In the appellant's presence, Reed called for a backup unit to transport the appellant;

4. The appellant asked his parole officer about the impact of his arrest on his parole. The parole officer told him he'd only go back to the Penitentiary if he was convicted of the new offense;

5. The parole officer had the impression that Reed placed the appellant under arrest; and

6. The appellant acknowledged that, during his interrogation by Sgt. Reed, he realized that he faced going back to prison. He then decided to run, and escape.

These circumstances, taken together in the context of the instant case, reveal that a reasonable person would have believed he

was not free to leave. *Mendenhall, Royer,* and *Russell.* If the appellant actually believed otherwise, then he wouldn't have made his aborted and frantic attempt to get away from Sergeant Reed.

The judgment of the Court of Appeals is affirmed.

ONION, P.J., concurs on the basis of the Court of Appeals' opinion

TEAGUE, CAMPBELL and DUNCAN, JJ., concur in the result.

CLINTON, Judge, dissenting.

The majority says, "If the facts support the conclusion that the appellant was *in custody* when he was *placed under arrest....* the Court of Appeals reached the proper conclusion." P. 66.[1] But when we treat an offense based on a statutorily defined element of "custody," resort to decisions construing the meaning of "seizure" in the Fourth Amendment is not likely to solve the problem. Since the majority is content to do just that and, in the doing, comes to an erroneous conclusion, I respectfully dissent.

> "It is quite plain that the Fourth Amendment governs 'seizures' of the person which do not eventuate in a trip to the station house and prosecution for crime —'arrests' in traditional terminology. It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person."

*Terry v. Ohio,* 392 U.S. 1, 16, 88 S.Ct. 1868, 1877, 20 L.Ed.2d 889 (1968).[2] Where the Warrant Clause of the Fourth Amendment is not implicated, a less intrusive "seizure" is to be tested against its "general proscription against unreasonable searches *or*

seizures." *Id.,* at 20, 88 S.Ct., at 1879. See, e.g., *Pennsylvania v. Mimms,* 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977) (ordering driver stopped for traffic violation out of car is a "seizure" but permissible).

*United States v. Mendenhall,* 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.d 497 (1980), and *Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983), as well as *Russell v. State,* 717 S.W.2d 7 (Tex.Cr.App. 1986), upon which the majority opinion in this cause relies, are progeny of *Terry v. Ohio,* supra. Their principal contribution to Fourth Amendment jurisprudence has been to develop a standard by which courts may determine whether particular police conduct constitutes a "seizure." That is, "only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed he was not free to leave," *Mendenhall,* 446 U.S. at 554, 100 S.Ct., at 1877; *Royer,* 460 U.S. at 502, 103 S.Ct., at 1326; *Russell,* at 10.

But whether a person was "seized" is merely a threshold inquiry in determining a claim that an intrusion upon his liberty or privacy occurred without particularized and objective justification required in the circumstances to render the "seizure" reasonable. Therefore, a "seizure" for purposes of the Fourth Amendment does not necessarily equate with "custody" within the meaning of V.T.C.A. Penal Code, § 38.07. So, federal decisions relied on by the majority do not dictate our construction of a state statute in which the critical component is "custody," not "seizure."[3]

The Court of Appeals did find that Officer Reed "effected a warrantless *arrest*" of appellant, and that appellant "committed the offense of felony escape when he ran

---

1. All emphasis is mine throughout if not otherwise noted.

2. The Fourth Amendment governs all seizures of the person, "including seizures that involve only a brief detention short of traditional arrest. [citations omitted]." *United States v. Brignoni-Ponce,* 422 U.S. 873, at 878, 95 S.Ct. 2574, at 2578, 45 L.Ed.2d 607 (1975).

3. Indeed, endeavoring in his brief to uphold the reason for the decision of the Houston (14th)

Court of Appeals, the assistant district attorney never once alludes to the *Mendenhall–Royer* standard. Instead, he addresses the statute and such statutory definitions of revelant terms that are ingredients of the offense of escape, only to critique "the Legislature's woeful lack of clarity in defining these basic terms"—"arrest" and "custody" in § 38.01(2). They are, he concludes, "circular in part." State's Reply Brief, at p. 9. Accordingly, he develops yet another theory which, as I understand its opinion, the majority notices at page 64, but *does not adopt.*

from Sergeant Reed after first being taken into *custody.*" Those two conclusions of law are central to the rationale of the court in overruling the point of error advanced by appellant. *Morris v. State*, 696 S.W.2d 616, 618, 619. (Tex.App.—Houston [14th] 1985). They are also essential elements of the felony offense of escape under § 38.07, *supra* (as originally enacted). In context of the facts here appellant must have escaped "from custody" while in the status of being "under arrest." See *Snabb v. State*, 683 S.W.2d 850 (Tex.App.—Corpus Christi 1984), no PDR history. Let us examine his status.

The uniform definition of "arrest" in Texas is that prescribed by Article 15.22, V.A.C.C.P., *viz:*

"A person is arrested when he has been *actually* placed under restraint or taken into custody by an officer.... arresting without a warrant."

Accordingly, *Smith v. State*, 153 Tex.Cr.R. 230, 219 S.W.2d 454 (1949), teaches, "The mere fact that an officer makes the statement to an accused that he is under arrest does not complete the arrest." 219 S.W.2d, at 456. So the fact that Officer Reed may have "advised" appellant he was "under arrest" is not determinative of his actual status.

The "point of arrest" is "at the moment that a person's freedom of movement is restricted or restrained." *White v. State*, 601 S.W.2d 364, 366 (Tex.Cr.App.1980); *Maldonado v. State*, 528 S.W.2d 234, 237 (Tex.Cr.App.1975); *Hardinge v. State*, 500 S.W.2d 870, 873 (Tex.Cr.App.1973); *Woods v. State*, 466 S.W.2d 741, 743 (Tex.Cr.App. 1971).

Officer Reed did not place appellant under restraint of handcuffs; he had none. So far as this record shows, he did not place appellant under other personal restraint or otherwise restrict his freedom of movement. Compare *White v. State*, supra, at 365 (officer chased after, caught and tackled suspect and then at the point of a pistol placed him in spread-eagled position against stock trailer). Indeed, that appellant was able to jump up and run out of the office clearly demonstrates that his freedom of movement had not been restricted.

Appellant invokes the rationale of *Snabb v. State*, supra, while the State seeks to discredit it. The majority resolves the dispute by the simple expedient if overruling *Snabb*, although it analyzes § 38.07 in light of germane cases and applies the law to somewhat similar facts.

The issue here is "custody" as defined by our statute, not "seizure" within the meaning of the Fourth Amendment. The majority should address state law in deciding the contested issue. Ample precedents in this jurisdiction support appellant's position. He was not arrested in that he had not been placed under the restraint required by Article 15.22, supra.

The judgment of the Houston (14th) Court of Appeals should be reversed. Because it is not I respectfully dissent.

MILLER, J., joins in this opinion.