Michael John **SCHRADER**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 3–87–034–CR.

Court of Appeals of Texas,
Austin.

June 1, 1988.

Christopher M. Gunter, Austin, for appellant.

Ken Oden, Co. Atty., Alia Moses, Asst. Co. Atty., Austin, for appellee.

Before POWERS, BRADY and CARROLL, JJ.

POWERS, Justice.

Over a plea of not guilty, the trial court sitting without a jury found and adjudged Michael John Schrader guilty of resisting arrest. Tex.Pen.Code Ann. § 38.03 (1974). The court assessed punishment at three days imprisonment and a fine of $200.00. We will affirm the judgment.

Schrader brings to this Court a single point of error: the evidence was insufficient to permit a rational inference that he was guilty, beyond a reasonable doubt, of the offense charged in the complaint and information. He contends specifically that the finding of guilty was irrational because the undisputed evidence showed that he was *already* under arrest at the time he first used force against a peace officer in the episode described below, and while his use of force might have constituted an assault on the peace officer or an attempt to escape from custody, under other parts of the penal code, these were not the offenses alleged against him. We disagree with Schrader's theory for the reasons set out below.

## SUMMARY OF THE EVIDENCE

Buoyed by alcohol, Schrader created a disturbance in a restaurant by his profanity and his otherwise offensive behavior. A peace officer, summoned by the proprietor, asked Schrader to place his unfinished drink on a table and leave the restaurant. (The restaurant's license permitted only on-premise consumption of alcoholic beverages.) Schrader complied with the order to leave, but took his drink. As Schrader passed through the restaurant, a second peace officer asked that he leave the drink behind. Schrader brushed the officer aside. The officer declined to force the issue at that point.

The two peace officers followed Schrader into the restaurant parking lot where they stopped him. The officers were in substantial agreement, in their testimony, that Schrader was not free to leave the parking lot because the officers would have arrest-

ed him, without a warrant, for public intoxication.

One officer ordered Schrader to accompany the two officers back to a point near the restaurant. He did so without resistance. Schrader stood at the designated location, with one of the officers, while the other called to determine whether any outstanding warrant required Schrader's arrest. On learning that such a warrant existed, one of the officers informed Schrader that he was under arrest pursuant to the warrant (issued in connection with an alleged traffic offense). Thereupon, the officers attempted to handcuff Schrader. He resisted by kicking, hitting, and biting one of the officers in a brief struggle.

About five minutes elapsed between the time the officers stopped Schrader in the parking lot and the moment the struggle occurred.

## DISCUSSION AND HOLDINGS

The ultimate issue is one of statutory construction. It is, specifically, the meaning of the expression "effecting an arrest" as it is used in Tex.Pen.Code Ann. § 38.03(a), setting forth the offense charged against Schrader:

A person commits an offense if he intentionally prevents or obstructs ... a peace officer ... from *effecting an arrest* ... of the actor ... by using force against the peace officer.

*Id.* (emphasis added). Depending upon the meaning assigned the expression "effecting an arrest," the evidence is or is not sufficient to support the finding of guilty in Schrader's case.

Schrader argues that the meaning of the expression, "effecting an arrest," is coextensive with the meaning assigned the word "arrest" in certain judicial decisions applying the constitutional prohibition against unreasonable searches and seizures, whether of persons, houses, papers, or effects—a prohibition designed to protect the privacy interest. U.S. Const. Ann. Amend. IV; Tex. Const. Ann. art. 1, § 9 (1984); *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20

L.Ed.2d 889 (1968). For example, the Legislature has defined *when* an "arrest" occurs:

A person *is* arrested when he has been *actually* placed *under restraint* or *taken into custody* by an officer.

Tex.Code Cr.P.Ann. art. 15.22 (1977). In construing this statute, the Court of Criminal Appeals stated as follows in a decision determining the validity of an arrest, and hence the validity of a search of the person incident to that arrest:

It is not the physical taking into custody that will constitute an arrest. An arrest is *complete* whenever a person's *liberty of movement is restricted* or restrained.

*Hardinge v. State,* 500 S.W.2d 870, 873 (Tex.Cr.App.1973) (emphasis added and citations omitted). In apparent reference to the word "complete," Schrader then reasons that an "arrest" occurs *once and for all* at the instant a person's freedom of movement is surrendered in response to a show of official force and authority. Consequently, he concludes, his "arrest" was "complete" in the parking lot when he obediently followed the peace officers back to a point near the restaurant where he subsequently assaulted one of the officers; while the assault may have constituted an attempt to escape from custody or an assault on a peace officer, as prohibited by other provisions of the penal code, the assault could not have amounted to Schrader's forcible interference with an "arrest" that was "complete" when made in the parking lot some five minutes earlier. We reject Schrader's theory.

We have then to assign the proper meaning to the statutory language in § 38.03(a) where the Legislature made it an offense forcibly to prevent or obstruct "a peace officer ... from effecting an arrest." In so doing, the Legislature obviously acted to protect the police function encompassed in a peace officer's "effecting an arrest." This purpose is plainly evident in the fact that an offense under § 38.03(a) consists in a forcible interference with the actor's arrest *or* the arrest of another. Section 38.-03(a) has the additional important purpose of discouraging dangerous confrontations

at the scene concerning the lawfulness of any particular "arrest." *Even if* a particular "arrest" *is* arbitrary under the constitution or otherwise unlawful, § 38.03(a) discourages a unilateral, subjective determination of that issue and a resort to force, at the point of "arrest," in favor of an objective determination in the courts held open for that purpose. This legislative objective is implicit in the fact that "[i]t is no defense to prosecution ... that the arrest ... was unlawful," as stated in subsection (b) of § 38.03. The meaning of the expression "effecting an arrest" must therefore accommodate each of these important legislative purposes.

■ We believe the Legislature intended the expression "effecting an arrest" to encompass the reasonable actions of a peace officer in bringing a person under the offi-

cer's control for the purposes of the law. The expression implies *not* the *positional status* of one who is "under arrest" or "in arrest" but the *experiential process* or *transaction* by which control of the person is obtained, so that it may be said that he "has been *actually* placed under restraint or taken into custody by [the] officer." Tex.Code Cr.P. art. 15.22 (emphasis added). One's positional status—whether he is "arrested" or not—is *the* essential inquiry in determining whether the constitutional guarantee against arbitrary "arrest" has been violated in his case. In the application of § 38.03(a) of the penal code, however, the essential inquiry is whether the actor has forcibly interfered with the "arrest" transaction or process by which the officer has attempted to bring under control the actor or another.[1] If the actor

---

1. In one decision involving an offense found in Chapter 38 of the penal code, the Court of Criminal Appeals has expressly applied a Fourth Amendment concept of "arrest" over a dissent that specifically pointed out the anomaly of doing so. The decision is *Morris v. State*, 739 S.W.2d 63 (Tex.Cr.App.1987), affirming the defendant's conviction for the offense of escape from custody, as set out in § 38.07(a)(1) of the penal code:

   A person commits an offense if he escapes from *custody* when he is:

   (1) *under arrest* for, charged with, or convicted of an offense; or

   (2) in custody pursuant to a lawful order of a court.

   (Supp.1988) (effective date September 1, 1985) (emphasis added). The evidence in *Morris* showed that a peace officer informed the defendant he was under arrest for a specific offense, informed him of his constitutional rights and gave him his "legal warning," called for assistance in transporting the defendant from the place of arrest, but did not handcuff appellant for want of a pair of cuffs. "At that point," the appellant fled, to be taken "back into custody" when he was found in a field some time later. 739 S.W.2d at 65–66. Curiously, the majority opinion does not mention the definition of "custody" as set out in § 38.01(2) for application in Chapter 38 of the penal code. The majority in *Morris* expressly equated the Fourth Amendment word "seized" and the word "arrest," as used in § 38.07(a)(1) of the penal code, holding that in either context they refer to the person's reasonable belief, deduced from all the circumstances, that he is not free to leave. 739 S.W.2d at 66.

   The Code of Criminal Procedure, in art. 15.22 (1977), establishes that an "arrest" occurs when one is "actually placed under restraint or taken into custody by an officer." One is perhaps free to conclude from the *Morris* opinion that the word "arrest," therefore, means the same thing in the penal code *wherever* it is found. It means, specifically, what the word "arrest" means in the Fourth Amendment context, as the Court of Criminal Appeals applied it in *Morris* to the offense of escaping from "arrest," which is one element of "custody" as stated in § 38.01(2) of the penal code.

   We are reluctant so to construe the *Morris* opinion in the present case involving the correct meaning of the expression "effecting an arrest," as used in § 38.03(a) of the penal code. We base our reluctance on the reasons given in the text of this opinion: (1) the legislative purposes that underlie § 38.03(a) of the penal code would be defeated if the period of an "arrest" begins *and ends* in the millisecond required for one to form a reasonable belief that he is not free to leave; (2) the word "effecting" has no meaning at all under that interpretation, for the word "arrest" is fully adequate for the purpose if that interpretation is correct; and (3) the previous decisions of the Court of Criminal Appeals, applying § 38.03(a), fail of explanation under that interpretation. See, e.g., White v. State, 601 S.W.2d 364 (Tex.Cr.App.1980), (defendant "spread-eagled" before the assault); *Humphreys v. State*, 565 S.W.2d 59 (Tex.Cr.App.1978), (defendant began "backing away" when placed under arrest); *Washington v. State*, 525 S.W.2d 189 (Tex.Cr.App.1975), (defendant dragged two arresting officers some distance before being subdued by efforts of other officers who responded to arresting officers' call for assistance). In each of these cases, the defendant must reasonably have believed he was not free to leave; and he must have reached that belief well before he was finally brought under the officer's control.

forcibly resists an *unlawful* arrest, that fact may have other consequences (such as the exclusion of evidence) but it does not determine anything of relevance under § 38.03(a).

Our construction of § 38.03(a) is suggested quite directly, of course, by the gerund "effecting" as used in the entire expression "effecting an arrest." The cognate "effect" means, in ordinary usage, to execute, enforce, or accomplish toward a final object or end, implying a transaction or process. Schrader's theory, in contrast, renders the word "effecting" quite meaningless and redundant, for the unadorned word "arrest" is entirely sufficient for his theory, as the word "arrest" is interpreted in those cases protecting the privacy interest in the context of arbitrary seizures of the person under the constitution. His theory is, of course, correct in that context. But § 38.03(a) has the specific purpose of *deferring* for judicial determination *whether* the privacy interest has been invaded unconstitutionally by an arbitrary seizure of the person. Schrader's theory would defeat that valid purpose (he does not argue that the purpose is invalid for any reason). It would defeat as well the Legislature's additional valid purpose of protecting peace officers as they carry out the arrest function—in Schrader's case, their execution of an arrest warrant, which action evidently precipitated Schrader's assault on one of the officers.

Our construction of § 38.03(a), in its use of the expression "effecting an arrest," is well within the application of that statute in the decisions we have found. In *Rendon v. State*, 146 Tex.Cr.R. 163, 172 S.W.2d 343 (App.1943), which applied a predecessor statute, the arresting officers first acquired control over a person on a bus. He never resisted and obediently followed the arresting officers from the bus. A crowd protested the arrest, however, and attempted to free the prisoner. Rendon was identified as one who had thrown a rock at the officers in the resulting melee. The court held the evidence sufficient to convict Ren-

don of resisting the arrest of another. If the prisoner's arrest had been "complete" when he was first restrained on the bus, Rendon's forcible interference with the officers thereafter could not have come within the statute prohibiting forcible interference with an arrest. That is, of course, Schrader's theory. The decision in *Rendon*, however, is to the contrary.

More recent decisions are to the same effect for they treat the expression "effecting an arrest" as referring to the actual tasks required of a peace officer as he attempts to detain and bring a person under control for the purpose for which he is arrested. *See White v. State*, 601 S.W.2d 364 (Tex.Cr.App.1980) (evidence held sufficient where accused was "spread-eagled" against stock trailer for a time, at gun point, then assaulted the officer when he attempted to apply handcuffs, it being shown "that an arrest was *in fact* taking place....") (emphasis added); *Humphreys v. State*, 565 S.W.2d 59 (Tex.Cr.App.1978) (evidence held sufficient where officer "*had* placed appellant under arrest" but he began "backing away" and struggle ensued when officer attempted to prevent his doing so) (emphasis added); *Washington v. State*, 525 S.W.2d 189 (Tex.Cr.App.1975) (evidence held sufficient where two officers informed woman she was to be arrested and in protracted struggle she pulled them toward her apartment until finally subdued through efforts of "an additional squad" called on the radio to assist the arresting officers); *McMorris v. State*, 516 S.W.2d 927 (Tex.Cr.App.1974) (evidence held sufficient where appellant disobeyed instruction by arresting officer to remain where he was while officer aided another officer attempting to handcuff appellant's brother nearby, the appellant not being placed under "arrest" until the later arrival of a third officer).

The decision in *Young v. State*, 622 S.W.2d 99 (Tex.Cr.App.1981) is consistent with the foregoing decisions. In that case, private persons forcibly ejected Young from

---

Nevertheless, the Court of Criminal Appeals held, in each case, that the evidence supported a determination that the defendant had forcibly

interfered with a peace officer "effecting an arrest," in the words of § 38.03(a).

the stage at Fair Park Coliseum. He came to rest in back of the stage where an off-duty police officer, working as a security officer, immediately handcuffed him. The officer directed Young to the coliseum "security office" where Young apparently went voluntarily in company with the security officer. In the "security office," the officer called the police dispatcher to arrange Young's transportation to the city jail. The escorting officers arrived, in response, some time later. They removed the handcuffs briefly from Young to substitute their own handcuffs. Before he could be shackled again, however, Young assaulted one of the escorting police officers. The court held the evidence to be *insufficient* to establish a violation of § 38.03 of the penal code because it was "clear" from all the testimony that Young was "placed under arrest" when he was first handcuffed by the security officer behind the stage. *Young,* 622 S.W.2d at 100. The apparent basis of the holding is that physical control over Young was actually accomplished as fully as it could have been, in the circumstances and for all purposes for which he was arrested, when he was handcuffed behind the stage. Nothing more was reasonably required.

In Schrader's case, we hold a rational trier of fact could reasonably infer from all the evidence, beyond a reasonable doubt, that the two policemen were "effecting an arrest" when Schrader kicked one of them as they attempted to handcuff him under authority of the newly discovered arrest warrant. While Schrader's arrest was "complete" with his detention in the parking lot, for some purposes of the law, other purposes did not preclude the officers' handcuffing him to reduce him to "actual" or physical restraint. Schrader's assault on the officer occurred about five minutes after Schrader was first detained, and all the intervening events were reasonable, if not routine, police functions, so far as the record indicates. We hold these events to be well within the statutory expressions "effecting an arrest" and "actually placed under restraint or taken into custody," as used in § 38.03 of the Texas

Penal Code and § 15.22 of the Texas Code of Criminal Procedure, respectively.

Accordingly, we affirm the judgment below.