**AFFIRM; and Opinion Filed August 5, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

No. 05-12-00095-CR
No. 05-12-00096-CR
No. 05-12-00097-CR

**THOMAS LEE NIX, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the County Court at Law No. 3**
**Collin County, Texas**
**Trial Court Cause Nos. 003-82321-10; 003-82323-10; and 003-82324-10**

## MEMORANDUM OPINION

Before Justices Bridges, Francis, and Lang-Miers
Opinion by Justice Lang-Miers

A jury convicted Thomas Lee Nix of resisting arrest, indecent exposure, and unlawful use or possession of an inhalant/lacquer thinner[1] and assessed jail terms of one year, 60 days, and 180 days, respectively. In eight issues, appellant challenges the sufficiency of the evidence to support his convictions, admission of various evidence, the denial of court-appointed counsel, and the denial of a continuance. We issue this memorandum opinion because all dispositive issues are settled in law. TEX. R. APP. P. 47.2(a), .4. We affirm the trial court's judgments.

---

[1] The record shows that the terms lacquer thinner, paint thinner, and lacquer were used interchangeably during the trial.

## BACKGROUND

In March 2010 Leticia Barron was working as the front desk receptionist at the Best Western hotel in Wylie when she heard a commotion on the first floor. Barron went to investigate and found appellant poking his head out of the door to his room, screaming for "Danielle." Barron checked the computer, saw no one by that name, and went back to tell appellant. Appellant then began calling out another woman's name. At that point, Barron began to think appellant "wasn't sure of what was going on." Appellant started laughing, began making nonsensical remarks, and said he was "shrinking." He got louder and told Barron to "come closer." He called her a "slut" and said he "loves sluts." As appellant stepped out of his room, Barron saw he was not wearing pants. Appellant told Barron he had a gun and was going to "get" her.

Barron fled down the hallway with appellant chasing after her. She was "scared" and thought appellant was going to rape her. She ran back to the desk in the lobby, grabbed her phone, went outside, and called 911. In the call, she reported that a "crazy man" dressed in a shirt and underwear was following her around the hotel. At trial, she testified she had assumed appellant had on underwear because he was wearing a shirt and she could only see his legs. But, she explained, she was "shocked and frightened" and did not "stop to take a full look at him." Barron testified she did not see appellant's genitals.

The police department is located across the street from the hotel, and Officers Mike Palko and Jason Smith arrived at the scene in less than two minutes. Barron, who was upset and crying, told the officers that a man was chasing her and yelling at her. She led them to the hallway where appellant's room was located. Appellant was standing in the hallway and appeared to have locked himself out of his room. Barron pointed him out to officers, and Palko

saw that he was wearing a long-sleeved shirt and was naked from the waist down. The officers called out to appellant. Barron left the area and did not witness the encounter with the police.

Palko identified himself as a police officer, and appellant responded, "Who the hell are you?" As the officers approached appellant, they noticed a "strong smell" of a paint product, which they later determined was paint thinner. Appellant had a blank stare on his face, was unsteady on his feet, had an "attitude," and was holding a yellow rag. Palko asked appellant if he was "huffing," and appellant turned away. Palko decided to detain appellant while he investigated and told appellant to put his hands behind his back. As Palko attempted to place appellant's hands behind his back to handcuff them, appellant "threw up both hands." Smith tried to grab appellant's arms, and appellant continued to resist. Palko performed a leg sweep, taking appellant to the ground on his stomach.

Smith testified that he was trying to effect an arrest of appellant once they took him to the ground, but appellant resisted. The officers told appellant several times to stop resisting and to give them his arms so he could be placed in handcuffs. Appellant continued to resist, kicking at the officers and choking Palko. The officers called for assistance, and Sgt. Randy Hooker was among the ones who responded.

Hooker said when he arrived at the scene he saw Palko and Smith trying to subdue appellant. He said appellant was naked from the waist down. Hooker said he attempted to assist the officers, and appellant attempted to bite him on the leg. Ultimately, it took four officers to subdue appellant. At the end of the four-minute altercation, Smith had suffered a sprained hand. Palko and Smith said appellant was "very strong," which they suggested was one of the effects of inhaling paint thinner.

Once appellant was in custody, the officers gained entry to his room. They were concerned about the heavy odor in the hallway and wanted to allow the fumes in appellant's

room to disburse. Also, they said they needed to get clothing so appellant could be transported to jail. Once inside the room, officers saw an open can of paint thinner, small butane torches, and several pornographic DVDs. A pornographic movie was playing on the television. Barron also testified to seeing these same items.

In addition to the testimony of Barron and the police officers, the State showed a DVD recording to the jury. The DVD contained seventeen clips. Four of the clips depicted appellant moving through the halls of the hotel as he followed Barron, going outside and coming back in, just before the police arrived. In the clips, appellant was wearing a long-sleeved blue shirt, and his legs were bare. The shirt was unbuttoned. There were also clips depicting the hallway encounter with the police, but the video was blurry.

## SUFFICIENCY OF THE EVIDENCE

In his first issue in each of these appeals, appellant challenges the sufficiency of the evidence to support his convictions. In reviewing a sufficiency challenge, we examine the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). When analyzing the sufficiency of the evidence, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Id.* We treat direct and circumstantial evidence equally. *Id.*

### Resisting Arrest

We begin with appellant's conviction for resisting arrest. To obtain a conviction for resisting arrest, the State was required to prove that appellant intentionally prevented or

obstructed a person he knew was a peace officer from effecting an arrest by using force against that person. TEX. PENAL CODE ANN. § 38.03(a) (West 2011). The expression "effecting an arrest" in this statute encompasses reasonable actions of a police officer in bringing a person under the officer's control. *Shrader v. State*, 753 S.W.2d 733, 735–36 (Tex. App.—Austin 1988, pet. ref'd). It is not necessary to announce to a defendant that he is under arrest. *White v. State*, 601 S.W.2d 364, 365 (Tex. Crim. App. 1980). Such an announcement would be one circumstance for the factfinder's consideration in determining if and when an arrest took place. *Id*. The issue is whether the actor has forcibly interfered with the "arrest" transaction or process by which the officer has attempted to bring the actor under control. *Shrader*, 753 S.W.2d at 735–36.

Here, the charge identified the peace officers as Smith, Palko, and Hooker and allowed conviction if appellant intentionally or knowingly prevented or obstructed any one of them from effecting his arrest. Appellant argues the evidence is insufficient because the officers consistently stated appellant was "merely detained." Although the evidence showed Smith and Palko initially intended to detain appellant while they continued to investigate, Smith said he was trying to effect an arrest after appellant was brought to the ground during the altercation. Smith testified appellant was repeatedly told to stop resisting and to give them his arms so they could handcuff him. Appellant refused and continued to kick at the officers. At the end of the altercation, Smith was treated for a sprained hand. This evidence was sufficient for a jury to conclude, beyond a reasonable doubt, that appellant intentionally prevented or obstructed Smith from effecting an arrest by using force against him. We resolve this issue against appellant.

### Indecent Exposure

Appellant next asserts the evidence is insufficient to support his conviction for indecent exposure. A person commits the offense of indecent exposure if "he exposes his anus or any part

–5–

of his genitals with intent to arouse or gratify the sexual desire of any person, and he is reckless about whether another is present who will be offended or alarmed by his act." TEX. PENAL CODE ANN. § 21.08(a) (West 2011). The offense is based on the defendant's actions and mental state, not the other person's comprehension. *Metts v. State*, 22 S.W.3d 544, 547 (Tex. App.—Fort Worth 2000, pet. ref'd). In other words, the State is required to prove that the defendant's genitals were exposed, not that the victim actually saw the defendant's genitals. *Cate v. State*, 124 S.W.3d 922, 931 (Tex. App.—Amarillo 2004, pet. ref'd) (per curiam). Evidence that the accused was naked from the waist down is sufficient to illustrate exposure. *Id*.

Here, the charge authorized the jury to convict appellant if it believed, beyond a reasonable doubt, that appellant intentionally or knowingly exposed his genitals with the intent to arouse or gratify the sexual desire of any person and was reckless about whether another person was present, namely Barron, who would be offended and alarmed by his act.

Appellant argues there was no evidence he exposed himself in the presence of Barron. To the contrary, Palko testified that when he and Smith arrived at the scene, Barron led them to the hallway where appellant was standing. Barron pointed appellant out as the man who had chased her and yelled at her, and Palko said appellant was wearing a long-sleeved shirt and was naked from the waist down. This evidence was sufficient to show that appellant exposed his genitals in Barron's presence.

Additionally, we note the jury had video evidence of appellant moving through the hotel hallway and going outside just before officers arrived. Appellant was wearing an unbuttoned, long-sleeved shirt and was bare-legged. Barron testified she did not believe appellant had time to go to his room and remove his underwear in the brief time it took officers to arrive. From this evidence, the jury could have concluded that appellant was not wearing underwear as he chased Barron down the hall and could have inferred that he was exposing his genitals while doing so.

To the extent appellant argues that the evidence failed to show his exposure was with the intent to arouse and gratify the sexual desire of any person, we disagree. Intent to arouse or gratify can be inferred from appellant's conduct or remarks and the circumstances surrounding the act. *Cate*, 124 S.W.3d at 931. Barron testified appellant called her a "slut," said he loved "sluts," and demanded she come to him. Barron feared that appellant was going to try to rape her. This evidence was sufficient to show that appellant's exposure was with the intent to arouse and gratify his own sexual desire. As for his argument that there was no evidence that Barron was "offended or alarmed" by his exposure, the statute requires that appellant was reckless about whether another person was present who would be offended and alarmed by his act, not that the person was actually offended and alarmed. *See* TEX. PENAL CODE ANN. § 21.08; *see Metts*, 22 S.W.3d at 547 ("The victim's perception is not an element of the offense."). Regardless, the evidence showed that Barron fled when appellant began making lewd comments to her. She testified she was "shocked and frightened," so much so that she "didn't really stop and take a full look at him." She also testified she was offended and alarmed. From this evidence, a jury could rationally find that Barron would have been offended and alarmed by appellant's act of exposure. We resolve this issue against appellant.

## Unlawful Use or Possession of Inhalant

Appellant also argues that the evidence is insufficient to support his conviction for unlawful use or possession of lacquer thinner. He contends the State failed to present evidence to support a conclusion that paint thinner or lacquer thinner is an abusable volatile chemical. We disagree.

A person commits this offense if he inhales, ingests, uses, or possesses an abusable volatile chemical with intent to inhale, ingest, apply, or use the chemical in a manner (1) contrary to directions for use, cautions, or warnings appearing on a label of a container of the chemical;

and (2) designed to (A) affect the person's central nervous system; (B) create or induce a condition of intoxication, hallucination, or elation; or (C) change, distort, or disturb the person's eyesight, thinking process, balance, or coordination. TEX. HEALTH & SAFETY CODE ANN. § 485.031 (West 2010). The charge tracked the language of the statute and defined "abusable volatile chemical" as "a chemical that is packaged in a container subject to the labeling requirements concerning precautions against inhalation established under the Federal Substances Act, as amended, and regulations adopted under that Act and is labeled with the statement of principal hazard on the principal display panel 'VAPOR HARMFUL' or other labeling requirement subsequently established under that ACT or those regulations." *See id.* § 485.001(1)(A)(i).

When officers arrived on the scene, they found appellant in the hallway holding a yellow rag with a clear liquid or residue. There was a strong odor of a paint product. Palko testified that based on his training and experience he believed appellant was "huffing" or inhaling some type of paint product. Palko testified that when the officers gained entry to appellant's hotel room, they found an open container of paint thinner. He agreed that paint thinner was also referred to as lacquer thinner. He testified that based on his training and experience huffing a paint thinner or lacquer thinner in a certain manner is designed (1) to affect appellant's nervous system; (2) to create or induce the condition of intoxication, hallucination, or elation; and (3) to change, distort, or disturb the person's eyesight, thinking process, balance or coordination. When asked if there were directions for use, cautions, or warnings that appeared on the label of that container, Palko responded: "Yes, there should be on the label powerful - - should say something to the effect of harmful if not met by the intended use or something like that. Also flammable." Palko testified that lacquer thinner is an abusable volatile chemical. Based on his observations of appellant that day, Palko believed appellant was intentionally or knowingly inhaling, ingesting, or using it in an

unintended manner. He explained that appellant had a blank stare, was unsteady on his feet, was holding a rag with liquid in an odor-filled hallway, and had an attitude.

Smith also testified that lacquer thinner is an abusable volatile chemical. He said when he approached appellant, he smelled paint or paint thinner, leading him to believe appellant had been sniffing or huffing a paint product. And Sgt. Randy Hooker testified that he photographed the container of lacquer thinner found in appellant's room and was aware that the container had directions for use, cautions, and warnings.[2] He referred to it as a "health warning." He said the police department did not keep the container because it does not have a place to store volatile chemicals and the container was dangerous and flammable.

Having considered this evidence, we conclude that a rational jury could have determined that the lacquer thinner found in appellant's room was an abusable volatile chemical, and there were cautions and health warnings on the back of the container stating the product was harmful if not used as intended. Further, there was sufficient evidence to establish that appellant inhaled the product contrary to the directions for use, cautions, and warnings, and did so in a manner designed to induce intoxication.

In reaching this conclusion, we reject appellant's suggestion that the officers' testimony that the product was an abusable volatile chemical was nothing more than a "bare conclusion" that was of "no evidentiary value." The officers testified that the substance was dangerous and flammable and the container had warnings on its label. One officer described the statement as a "health warning." We resolve this issue against appellant.

---

[2] Our record contains the original photograph of the container admitted into evidence at trial, and it is not possible to read the warnings on the back of the container.

## ADMISSION OF EVIDENCE

Appellant next complains that the trial court erred by admitting (1) evidence discovered by officers pursuant to a warrantless search of his room, (2) an improperly authenticated, unoriginal compilation of "selected highlights" of video footage, and (3) any evidence discovered after he was "unlawfully detained."

We begin with the evidence discovered after a warrantless search of appellant's room. Appellant argues the search violated his rights under the Fourth Amendment because it was not justified by one of the exceptions to the warrant requirement, rendering the evidence inadmissible. Appellant does not identify specific evidence, but it appears he is complaining about the photographs showing various items in the room.

To preserve error in admitting evidence, a party must make a proper objection and get a ruling on that objection. TEX. R. APP. P. 33.1. Additionally, a party must object each time the inadmissible evidence is offered or obtain a running objection. *Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003).

We need not determine whether the State proved an exception to the warrant requirement because evidence of the items found in the room was admitted elsewhere without objection. In particular, Barron testified that when she went in the room after appellant's arrest, she saw what looked like paint thinner, blow torches of different sizes, and "a lot of porn." Additionally, Hooker testified that the room contained an open can of paint thinner, small butane torches, an empty bag of what later tested positive for methamphetamine, a glass pipe, and pornography. This testimony described the same, and more, evidence depicted by the photographs. Because it was admitted without objection, any error in admitting the photographs was cured. *See Valle*, 109 S.W.3d at 509–10.

–10–

Appellant next argues that the trial court abused its discretion by admitting video evidence that he contends was improperly authenticated, unoriginal, and incomplete. State's exhibit 2 was a DVD containing multiple clips of appellant moving through the hotel and outside before police arrived and of his encounter with the police that were captured on the hotel's surveillance system. At the time the exhibit was offered, appellant said he had no objections to its admission. By stating no objection when the exhibit was offered, appellant did not preserve this issue for our review. *See* TEX. R. APP. P. 33.1.

Appellant also contends that the trial court erred by admitting any evidence "discovered after officers unlawfully detained" him. He argues the officers did not have reasonable suspicion to detain him and, but for the unlawful detention, there would be no evidence connecting him to the commission of any offense. But appellant does not direct us to any place in the record where he complained about the lack of reasonable suspicion to detain him. The record does not reflect that appellant filed a motion to suppress nor did our review show an objection to any evidence on the basis that the officers lacked reasonable suspicion for the initial detention. *See* TEX. R. APP. P. 33.1(a) (stating requirements to preserve complaint for appellate review); *Ibarra v. State*, 11 S.W.3d 189, 197 (Tex. Crim. App. 1999) (if defendant fails to preserve error at trial, he may not later assert that error on appeal). We conclude that appellant has not preserved this issue for our review.

### RIGHT TO COUNSEL

In each of the cases, appellant complains he was unconstitutionally denied his right to court-appointed counsel. He argues that the sole factor for denying him court-appointed counsel "appears to be income exceeding 125% of the 2008 federally determined poverty level." He argues that other factors should have been considered, and that he "was effectively denied his Sixth Amendment right to representation and rights under Tex. Code Crim. Proc. § [sic] 26.04."

Article 26.04 establishes procedures for appointing counsel to represent indigent defendants. TEX. CODE CRIM. PROC. ANN. art. 26.04 (West Supp. 2013). Factors a trial court considers in making this determination include the defendant's income, source of income, assets, property owned, outstanding obligations, necessary expenses, the number and ages of dependents, and spousal income that is available to the defendant. *Id*. art. 26.04(m). The trial court determines indigency on a case-by-case basis as of the time the issue is raised and not as of some prior or future time. *Gray v. Robinson*, 744 S.W.2d 604, 607 (Tex. Crim. App. 1988). A trial court does not have a duty to appoint counsel, however, until the defendant shows he is indigent. *Id*. The defendant must first make a prima facie showing of indigence. *McFatridge v. State*, 309 S.W.3d 1, 6 (Tex. Crim. App. 2010). If the defendant does so, the State may present evidence that the defendant is not indigent. *Id*. After the defendant makes a prima facie showing of indigency, a trial court's determination that the defendant is not indigent may be upheld on appeal only if the record contains evidence supporting this determination. *Id*.

In this case, the appellate record contains two documents, both entitled "Indigency Flow Sheet," reflecting the court made two evaluations of appellant's indigency status. The first evaluation showed appellant had income at 144% of the poverty level; the second evaluation showed he had income at 155% of the poverty level. Both documents indicate that appellant provided affidavits of indigency and that the affidavits were reviewed. But the affidavits are not a part of our appellate record, and the only record of a pretrial hearing in which appellant's indigency status was discussed shows that appellant did not qualify for a court-appointed attorney. Consequently, the appellate record does not show that appellant made a prima facie case of his indigence, and so the trial court was under no duty to appoint an attorney to represent him. *See Gray*, 744 S.W.2d at 607.

Within this same argument, appellant contends that his waiver of counsel and decision to proceed pro se were based on a "false dichotomy under the law" and were not intelligent and voluntary. Appellant bases this argument on the trial court's alleged error in determining he was not indigent. But as we previously concluded, appellant has not shown the trial court erred by denying him court-appointed counsel. Consequently, the record does not support appellant's arguments. We resolve this issue against appellant.

## MOTION FOR CONTINUANCE

In each case, appellant complains the trial court erred by failing to continue the trial so that he could secure the attendance of the hotel manager in an effort to obtain "missing" video footage.

Articles 29.03 and 29.08 of the Texas Code of Criminal Procedure set out the procedures for requesting a continuance. Article 29.03 states: "A criminal action may be continued on the written motion of the State or of the defendant, upon sufficient cause shown; which cause shall be fully set forth in the motion." TEX. CODE CRIM. PROC. ANN. art. 29.03 (West 2006). And Article 29.08 states: "All motions for continuance must be sworn to by a person having personal knowledge of the facts relied on for the continuance." *Id*. art. 29.08. The court of criminal appeals has construed these statutes to require a sworn written motion to preserve appellate review of a trial court's denial of a motion for a continuance. *Anderson v. State*, 301 S.W.3d 276, 279 (Tex. Crim. App. 2009). Consequently, if a party makes an unsworn oral motion for a continuance and the trial court denies it, the party forfeits the right to complain about the judge's ruling on appeal. *Id*.

Here, appellant made an unsworn oral motion for continuance, which the trial court denied. Because appellant did not file a sworn written motion as required by the code of

criminal procedure, he has forfeited his right to complain about the trial court's ruling. *See id.*

We resolve this issue against appellant.

## CONCLUSION

We affirm the trial court's judgments.

/Elizabeth Lang-Miers/
ELIZABETH LANG-MIERS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)

120095F.U05



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

THOMAS LEE NIX, Appellant

No. 05-12-00095-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at Law No. 3, Collin County, Texas
Trial Court Cause No. 003-82321-10.
Opinion delivered by Justice Lang-Miers, Justices Bridges and Francis participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 5th day of August, 2014.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

THOMAS LEE NIX, Appellant

No. 05-12-00096-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at Law No. 3, Collin County, Texas
Trial Court Cause No. 003-82323-10.
Opinion delivered by Justice Lang-Miers, Justices Bridges and Francis participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 5th day of August, 2014.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

THOMAS LEE NIX, Appellant

No. 05-12-00097-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at Law No. 3, Collin County, Texas
Trial Court Cause No. 003-82324-10.
Opinion delivered by Justice Lang-Miers, Justices Bridges and Francis participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 5th day of August, 2014.