TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00769-CR






Billy Doyle Medford, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF CALDWELL COUNTY, 274TH JUDICIAL DISTRICT


NO. 97-174, HONORABLE THOMAS KENYON, JUDGE PRESIDING







 Appellant Billy Doyle Medford appeals from the trial court's denial of his motion
to suppress evidence and his subsequent conviction for the offenses of felony escape and
possession of cocaine in an amount less than one gram. See Tex. Penal Code Ann. § 38.06(a)(1),
(c)(1) (West 1994); Tex. Health & Safety Code Ann. § 481.112(a), (b) (West Supp. 1998). The
jury found that appellant had five prior felony convictions as alleged in the enhancement
paragraphs of the indictment. Pursuant to the habitual felony offender statute, (1) the jury assessed
punishment for the cocaine possession at 20 years' imprisonment and life imprisonment for the
escape conviction. The trial court ordered the sentences to run concurrently. In this appeal,
Medford claims that the trial court erred in denying his motion to suppress evidence and by
submitting to the jury improper definitions of "custody" and "under arrest" in the escape charge;
he also challenges the sufficiency of the evidence to support his escape conviction. We will affirm
in part and reverse and render in part the trial-court judgment.


FACTUAL AND PROCEDURAL BACKGROUND

 Shortly before midnight on March 31, 1997, Lockhart Police Officer Beau Price
was patrolling in a marked squad car near the intersection of Rosewood and San Saba Streets in
Lockhart. That evening, Officer Price was looking for Ricky Reed, described as a black male of
medium to heavy build and five feet ten or eleven inches tall, for whom a felony arrest warrant
had recently been issued. Officer Price observed two people standing together near that
intersection. As he drove past, he recognized one of them as Travis Branch, whom he knew to
have a criminal history. The other was appellant, whom Officer Price testified as fitting the arrest
warrant's description of Ricky Reed. (2) Officer Price turned around and drove back to the
intersection. This time, he saw Travis Matthews and Jennifer Calderon, both of whom he
recognized, standing with Branch and Medford. As Officer Price approached the group in his
police car, Matthews and Calderon started walking east on Rosewood Street while Branch and
Medford headed north on San Saba. Officer Price testified that when he got closer, Medford
stepped off the street and began walking through the front yard of an adjoining residence.

 Officer Price approached Medford and asked him his name. He testified that
appellant was initially evasive but finally identified himself as "Michael Landry." However,
Medford was unable to spell that name, and did not reply when asked his date of birth. At this
point, Officer Raymond Baladez had arrived on the scene and was standing by in a backup
position. Officer Price testified that the area was poorly lit and that he considered it to be a
dangerous area after dark; he also knew the area was one in which crack cocaine deals took place
at night, and that drug dealers often carry weapons. He decided to frisk Medford for weapons. 
As he was conducting a pat-down search of appellant's outer clothing, Officer Price felt several
small objects in appellant's pants pocket. He testified that he asked appellant what was in his
pocket, to which Medford replied: "Cigarettes and matches. You can look." Officer Price then
asked appellant if he was giving him consent to look in his pocket, and Medford answered: "I told
you you could look." Officer Price removed a pack of cigarettes and a matchbox from appellant's
pocket. He shook the matchbox and heard something rolling around inside. Upon opening the
box, Officer Price saw several small rocks of what appeared to be crack cocaine.

 At that point, Officer Price informed appellant that he was under arrest and
instructed Medford to place his hands behind his back. Officer Price testified at trial that he
touched Medford's left arm with his left hand and was about to handcuff him when Medford
lunged free and began running south. Medford ran across the street, jumped a fence, and ran
through neighboring yards with Officer Price in pursuit. After a lengthy chase, Officers Price and
Baladez managed to subdue Medford and place him under arrest. Laboratory tests subsequently
confirmed that the substance in the matchbox was crack cocaine.

 Before trial, appellant moved to suppress the cocaine evidence, claiming that it was
seized in violation of his constitutional rights. The judge at the suppression hearing (3) denied
appellant's motion. A jury subsequently found appellant guilty of the offenses of escape and
possession of cocaine.

 On appeal, Medford presents four points of error. In his first two points, appellant
claims that the trial court erred in denying his motion to suppress evidence, arguing that the
evidence was obtained as the result of an illegal stop and search in violation of his rights under the
United States and Texas constitutions. In his third point of error, Medford alleges that the court
erred in including improper definitions of "custody" and "arrest" in the jury charge. Finally,
appellant challenges the sufficiency of the evidence to support his conviction for escape.


DISCUSSIONConstitutionality of the Initial Detention and Terry Stop

 In his first point of error, appellant claims that the stop and search violated his
rights under the Fourth Amendment to the U.S. Constitution, and that the trial court abused its
discretion in overruling his motion to suppress evidence of the crack cocaine obtained as a result
of that illegal stop and search. U.S. Const. Amend. IV. Appellant's second point of error makes
the same argument based on appellant's rights under the Texas Constitution. See Tex. Const. art.
I, § 9. Because appellant concludes in his brief that search and seizure law under article I, section
9 is interpreted by Texas courts consistent with the federal courts' interpretation of Fourth
Amendment law, we will address these points together.

 In reviewing a trial court's ruling, an appellate court must first determine the
applicable standard of review. The amount of deference a reviewing court affords to a trial court's
ruling on a mixed question of law and fact often is determined by which judicial actor is in a better
position to decide the issue. See Guzman v. State, 955 S.W.2d 85, 87 (Tex. Crim. App. 1997)
(citing Miller v. Fenton, 474 U.S. 104, 114 (1985)). If the issue involves the credibility of a
witness, thereby making the evaluation of that witness's demeanor important, compelling reasons
exist for allowing the trial court to apply the law to the facts. See id. (citing Miller, 474 U.S. at
114). On the other hand, if the issue is whether an officer had probable cause to seize a suspect
under the totality of the circumstances, the trial judge is not in an appreciably better position than
the reviewing court to make that determination. See id. Therefore, although due weight should
be given to the inferences drawn by trial judges and law enforcement officers, determinations of
reasonable suspicion and probable cause should be reviewed de novo on appeal. See id. (citing
Ornelas v. United States, 517 U.S. 690, 699 (1996)). "[T]he legal rules for probable cause and
reasonable suspicion acquire content only through application. Independent review is therefore
necessary if appellate courts are to maintain control of, and to clarify the legal principles." 
Guzman, 955 S.W.2d at 87 (quoting Ornelas, 517 U.S. at 697).

 In a motion to suppress hearing, the trial judge is the sole trier of fact, and he may
choose to believe or disbelieve any or all of the witnesses' testimony. See Romero v. State, 800
S.W.2d 539, 543 (Tex. Crim. App. 1990). Under Guzman, we must give great deference to the
trial court's ruling to the extent that it involved an evaluation of the credibility of witnesses or an
evaluation of their demeanor. Only Officers Baladez and Price testified at the hearing on the
motion to suppress; appellant did not testify, and there was no contradictory evidence presented. 
Because the trial court overruled appellant's motion to suppress, we will presume that the judge
found the police officers' testimony credible. However, we will review the issue of "reasonable
suspicion" de novo. See Guzman, 955 S.W.2d at 87.

 "The right of the people to be secure in their persons, houses, papers, and effects,
against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. Amend. IV. 
While appellant concedes that he consented to Officer Price's search of the matchbox the officer
detected during the pat-down search, he argues that Officer Price did not have a reasonable
suspicion to detain him during their initial confrontation. Appellant cites Terry v. Ohio, 392 U.S.
1 (1968), in which the United States Supreme Court first defined under what circumstances a
police officer may stop and frisk an individual without violating the Fourth Amendment:


[When] a police officer observes unusual conduct which leads him reasonably to
conclude in light of his experience that criminal activity may be afoot and that the
persons with whom he is dealing may be armed and presently dangerous, where in
the course of investigating this behavior he identifies himself as a [police officer]
and makes reasonable inquiries, and where nothing in the initial stages of the
encounter serves to dispel his reasonable fear for his own or others' safety, he is
entitled . . . to conduct a carefully limited search of the outer clothing of such
persons in an attempt to discover weapons which might be used to assault him.



Id. at 30. Officer Price admitted that he observed no suspicious behavior when he initially saw
Medford. Appellant argues that under the Terry standard, Officer Price could not have reasonably
concluded that criminal activity was afoot. The State responds that the initial confrontation was
either a police-citizen encounter unprotected by the Fourth Amendment, see United States v.
Hooper, 935 F.2d 484, 489-90 (2d Cir.), cert. denied, 502 U.S. 1015 (1991), or that it was a
proper Terry stop supported by Officer Price's reasonable suspicions.

 The reasonableness of a temporary detention must be examined in terms of the
totality of the circumstances and will be justified when the detaining officer has specific articulable
facts that, taken together with rational inferences from those facts, lead him to conclude that the
person detained actually is, has been, or soon will be engaged in criminal activity. See Woods v.
State, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997). When a police officer has an articulable,
reasonable suspicion that someone may be involved in criminal activity, he may stop that person
for investigation even though he does not have probable cause to arrest him. See Ponder v. State,
713 S.W.2d 178, 181 (Tex. App.--Austin 1986), aff'd, 745 S.W.2d 372 (Tex. Crim. App. 1988). 
The reviewing court may consider the totality of the circumstances, even facts of seemingly
innocent behavior, in order to determine the validity of the stop. See United States v. Sokolow,
490 U.S. 1, 8 (1989); Woods, 956 S.W.2d at 38. The legality of a Terry-type frisk on appeal is
judged by the "reasonable officer" standard: would the facts available to the officer at the moment
warrant a person of reasonable caution in the belief that the action taken was appropriate? See
Terry, 392 U.S. at 21-22.

 We need not consider the State's argument that the initial confrontation between
Officer Price and Medford was a "police-citizen encounter" unprotected by the Fourth
Amendment because we believe that, under the totality of the circumstances, Officer Price had
reasonable suspicion to briefly detain Medford for questioning. Officer Price testified that Ricky
Reed was believed to live in the vicinity of where he encountered Medford, and that a warrant for
Reed's arrest had recently been issued. Officers Price and Baladez both testified that Medford
generally resembled the warrant's description of Reed. Furthermore, Medford was with Travis
Branch when Officer Price initially saw him, and Officer Price knew that Branch had a criminal
history. Finally, Medford stepped off the street and began walking through a yard when Officer
Price approached him. These articulated facts support Officer Price's decision to question
Medford because they reasonably led him to suspect that appellant might be a wanted felon. See
United States v. Cortez, 449 U.S. 411, 417 n.2 (1981) ("Of course, an officer may stop and
question a person if there are reasonable grounds to believe that person is wanted for past criminal
conduct."); Woods, 956 S.W.2d at 38 (temporary detention will be justified when the detaining
officer has specific articulable facts and rational inferences that lead him to conclude that the
person detained actually is, has been, or soon will be engaged in criminal activity); Ponder, 713
S.W.2d at 181-82 (sufficient justification for stop and frisk existed when: (1) appellant's physical
appearance matched description broadcast over police radio, (2) he approached a police officer at
fast walk with his hand covered, and (3) a sheriff's deputy had been reported missing). Under
these circumstances, we cannot say that Officer Price violated appellant's constitutional rights
when he attempted to determine if Medford was Ricky Reed by approaching appellant to take a
closer look at him and ask him his name.

 We also conclude that the Terry search of appellant's outer clothing was
constitutional. Officer Price testified that he stopped appellant because he resembled the warrant's
description of Ricky Reed. As Officer Price circled back in his car after initially spotting Medford
and Branch, he saw them walk away from two other individuals. When Officer Price approached
Medford, appellant stepped off the street and started walking away through a yard. Upon being
asked his name, appellant gave Officer Price a name that he was unable to spell; he also refused
to give his date of birth. The stop took place late at night in a poorly lit area that was a frequent
location for crack cocaine deals. Finally, as Officer Price testified, drug dealers often carry
weapons. See Hall v. State, 928 S.W.2d 186, 188 (Tex. App.--Houston [14th Dist.] 1996, pet.
ref'd) ("Firearms have become the 'tools of the trade' for narcotics dealers."). We conclude that
under the totality of the circumstances, a reasonable police officer in Officer Price's position
would have sufficient grounds to fear for his own safety to justify frisking appellant's outer
clothing for weapons.

 Appellant relies heavily on Officer Price's "admission" that Medford wasn't acting
in a suspicious manner when he initially observed him, arguing that the detention was therefore
not justified under Terry. This argument is flawed because it focuses on a single moment in time
instead of the entire sequence of events. As the above recitation indicates, Officer Price
approached appellant because he resembled the warrant description of Ricky Reed. It was at that
point that appellant began acting in a manner that can be objectively described as suspicious by
(1) trying to avoid Officer Price, (2) evidently lying about his identity, and (3) refusing to give his
date of birth. The fact that appellant wasn't acting suspiciously when he was initially seen by
Officer Price is not outcome-determinative; Officer Price was entitled to briefly question appellant
to determine if he was Ricky Reed.

 Appellant complains that the only articulable facts in this case that support the stop
were that Medford was a black man of medium to heavy build in a drug-dealing area who stepped
into a yard. This ignores the reason Officer Price initially detained appellant: that Medford
generally fit the arrest warrant's description of Ricky Reed. In his brief, appellant states:


It is interesting to note that Officer Price allowed Travis Matthews, a person whom
he suspected had a criminal history, to walk away, and that he chose to stop
Appellant, whom he had no reason to believe had any criminal history at all, rather
than stop Travis Branch, whom he knew had a criminal history. We can infer,
therefore, that the criminal histories of those present were not relevant to Officer
Price that evening.



(Emphasis original.) This analysis ignores Officer Price's testimony that he initially detained
Medford to determine if he was Ricky Reed. It is entirely logical that Officer Price would detain
the only person of the four whom he did not know and who resembled Ricky Reed, instead of
detaining someone that he knew was not Ricky Reed.

 Finally, appellant's argument that Officer Price admitted to an unconstitutional
practice by acknowledging that he "always conduct[s] pat-down searches when he encounters
somebody on the street at night" is misleading. A review of the hearing transcript reveals that
Officer Price made the above statement in the context of explaining that he protects himself during
Terry stops of suspicious persons at night by conducting a pat-down search. The transcript
testimony does not indicate that Officer Price has a practice of randomly frisking every person he
passes on the street at night, as appellant argues by taking the above statement out of context.

 Appellant has not pointed to anything in the record that would allow us to conclude
that the trial court abused its discretion by crediting the officers' testimony that Medford fit the
description of Ricky Reed. Furthermore, the facts articulated by Officer Price at the suppression
hearing support the conclusion that he had reasonable suspicion to frisk appellant as part of a valid
Terry stop. Appellant's constitutional rights had not been violated when he gave Officer Price
consent to examine the matchbox that was found to contain cocaine. The first and second points
of error are overruled.


Escape Conviction

Legal Sufficiency of the Evidence

 In his fourth point of error, appellant challenges the legal sufficiency of evidence
to convict him of escape. In conducting a legal sufficiency review, we determine whether, after
viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443
U.S. 307, 319 (1979); Griffin v. State, 614 S.W.2d 155, 159 (Tex. Crim. App. 1981). The
elements of escape are that a person (1) escape (2) from custody (3) after having been arrested for,
charged with or convicted of an offense. (4) See Henderson v. State, 600 S.W.2d 788, 789 (Tex.
Crim. App. 1979).

Appellant argues that the evidence adduced at trial did not legally establish that he escaped from
custody while he was under arrest for an offense.

 "Escape" is statutorily defined for purposes of chapter 38 of the Penal Code as
"unauthorized departure from custody," and "custody" is defined as "under arrest by a peace
officer or under restraint by a public servant pursuant to an order of a court." See Tex. Penal
Code Ann. § 38.01(1), (2) (West 1994). Article 15.22 of the Code of Criminal Procedure states
that a person is arrested when he has been actually placed under restraint or taken into custody. 
Tex. Code Crim. Proc. Ann. art. 15.22 (West 1977). Thus, in order to sustain appellant's
conviction, we must find that Medford had been placed under restraint or taken into custody at the
time he fled from officers Price and Baladez. (5)

 The State argues that actual, physical restraint is not a prerequisite to a showing of
custody, citing Harrell v. State, 743 S.W.2d 229, 231 (Tex. Crim. App. 1987). The State also
posits that an "oral pronouncement of arrest by a police officer to a suspect, with or without any
evidence of physical restraint, is sufficient to establish the element of custody, if a reasonable
person in the suspect's position would have believed he was not free to leave." For this
proposition, the State relies on Morris v. State, 739 S.W.2d 63 (Tex. Crim. App. 1987) and
Gilbert v. State, 787 S.W.2d 233 (Tex. App.--Fort Worth 1990, no pet.). For reasons we will
discuss, we believe that neither proposition is a valid statement of the law as applied to this case.

 The issue in Harrell was whether a prisoner transferred to a hospital out of medical
necessity retained the legal status of arrestee for purposes of determining whether he was in
"custody" under section 38.06(a). Before entering the hospital, Harrell was told that he was still
under arrest and in custody, and that if he ran away from the hospital he would be treated as if he
had escaped from jail. Harrell ignored that admonition and drove to Florida with another patient
and a local woman. See Harrell, 743 S.W.2d at 230.

 The Court of Criminal Appeals upheld Harrell's conviction for escape. The court
stated: "We now hold that actual, physical 'hands-on' restraint is not a prerequisite to a showing
of custody in the context of the offense of escape. Rather, it is important to look at the legal status
of the individual at the time of the escape." See id. at 231. Examining Harrell's legal status, the
court held that Harrell remained under arrest while at the hospital. See id. Because Harrell was
still "in custody" regardless of his physical location, it held that the court of appeals had erred in
focusing on the fact that Harrell was not under any kind of physical restraint while at the hospital. 
See id.

 As the Harrell court recognized, the issue of what constitutes an initial arrest was
not before the court in that case. See Harrell, 743 S.W.2d at 231. However, that is precisely the
issue in the present case: whether a person who has been stopped for questioning and who then
flees prior to being handcuffed has escaped from "custody" under section 38.06(a). Because
Harrell only instructs that physical restraint is not a necessary prerequisite to continuing custody
after an arrest and conviction, that rule is inapplicable to the present case.

 We next examine the proposition that a person is under arrest or in custody for the
purpose of escape if a reasonable person in the position of the arrestee would have believed that
he was not free to leave. In Morris, the defendant was appealing his conviction for theft; he had
not been charged with escape. The court of appeals found that, after being arrested but before
being searched, the appellant committed the felony offense of escape by running from the police
officer who arrested him. See Morris v. State, 696 S.W.2d 616, 619 (Tex. App.--Houston [14th
Dist.] 1985), aff'd, 739 S.W.2d 63 (Tex. Crim. App. 1987). The intermediate court concluded
that since Morris's escape in the presence of the police officer provided probable cause for the
second arrest, the evidence seized subsequent thereto was properly admitted. See id.

 A divided Court of Criminal Appeals affirmed. The three-judge plurality looked
to United States v. Mendenhall, 446 U.S. 544 (1980), which held that a person has been "seized"
within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding
the incident, a reasonable person would have believed that he was not free to leave. See id. at
554. The plurality then applied the Mendenhall test for "seizure" to the issue of whether a person
is "in custody" for purposes of committing the offense of escape. See Morris, 739 S.W.2d at 66. 
However, as the dissent observed:


[W]hen we treat an offense based on a statutorily defined element of "custody,"
resort to decisions construing the meaning of "seizure" in the Fourth Amendment
is not likely to solve the problem. . . . [W]hether a person was "seized" is merely
a threshold inquiry in determining a claim that an intrusion upon his liberty or
privacy occurred without particularized and objective justification required in the
circumstances to render the "seizure" reasonable. Therefore, a "seizure" for
purposes of the Fourth Amendment does not necessarily equate with "custody"
within the meaning of [the escape statute]. So, federal decisions relied on by the
majority do not dictate our construction of a state statute in which the critical
component is "custody," not "seizure."



Id. at 67 (Clinton and Miller, JJ., dissenting).

 Two courts of appeals have cited Morris and used the Mendenhall test to determine
that an appellant committed the offense of escape. See Johnson v. State, 838 S.W.2d 906, 907-08
(Tex. App.--Corpus Christi 1992, pet. ref'd); Gilbert v. State, 787 S.W.2d 233, 236 (Tex.
App.--Fort Worth 1990, no pet.). However, a majority of the Court of Criminal Appeals has
never embraced the view advanced by the Morris plurality. This Court has discussed Morris and
questioned the soundness of equating seizure for Fourth Amendment purposes with the statutory
definition of "arrest" in the context of escape or resisting arrest. See Schrader v. State, 753
S.W.2d 733, 735 n.1 (Tex. App.--Austin 1988, pet. ref'd). We have also held that the term
"custody" in the escape context clearly implies a degree of physical limitation, restraint, or
control. See Lawhorn v. State, 843 S.W.2d 268, 270 (Tex. App.--Austin 1992), aff'd, 898
S.W.2d 886 (Tex. Crim. App. 1995).

 Common sense does not support the idea that a person is "in custody," in the
context of the offense of escape, when a reasonable person would not feel free to leave. As
appellant's counsel urged at oral argument, a reasonable person might not feel free to leave if a
police officer telephoned him at home and instructed him to remain there. Adopting the State's
definition of "custody" would lead to the conclusion that a person in that situation would commit
the offense of escape simply by departing his home. This result is not compelled either by the
statutory definition of "custody" or by controlling case law. (6)

 We also find Morris distinguishable on its facts. In Morris, the detention took place
in the controlled space of a probation officer's office; the appellant sat in a chair and was
questioned by the arresting officer after being told he was under arrest. Morris decided to flee
only after discussing the impact of his arrest on his probation. The arresting officer did not
handcuff Morris because he did not have handcuffs with him and presumably he did not feel the
need to subdue Morris any further when Morris was sitting in a chair in the probation office,
surrounded by the police officer and the probation officer. The factual circumstances of Morris
are similar to those in Harrell because in both cases, the appellant had been placed under arrest
and was in a situation in which enough control was being exerted over him that further physical
restraint was not believed to be necessary. In the present case, however, custody had not clearly
been established when Medford fled, since Officer Price was unsuccessful in his attempt to
handcuff Medford immediately after a Terry encounter that took place on a public street.

 For these reasons, we believe that Gilbert v. State, 787 S.W.2d 233 (Tex.
App.--Fort Worth 1990, no pet.) was wrongly decided. In Gilbert, the appellant and a young
female passenger were observed in a parked car by police officers Solomon and Riddle in an area
in which vehicles were prohibited. Both officers ordered the driver to stop after the car began to
pull away. As Officer Solomon approached the vehicle, he saw the female passenger pulling up
her panties and blue jeans; she exclaimed to Solomon, "he made me do it" and told the officer that
she was eleven years old. Officer Solomon then directed Gilbert to stand by the car, where he was
ordered into a spread-eagle position, searched, and advised that he was under arrest. However,
Gilbert refused to be handcuffed and fled into a nearby park. See Gilbert, 787 S.W.2d at 234-35.

 The Fort Worth Court of Appeals upheld Gilbert's conviction for escape. See id.
at 236. The court adopted the Morris plurality's rule that a person is under arrest or in custody
for purposes of the escape statute if a reasonable person in the defendant's position would have
believed that they were not free to leave. See Gilbert, 787 S.W.2d at 236. The Gilbert court also
repeated the statement from Harrell that "[a]ctual, physical 'hands-on' restraint is not a
prerequisite to a showing of custody in the context of the offense of escape." See id. (citing
Harrell, 743 S.W.2d at 231). Because a reasonable person in Gilbert's position at the time Officer
Solomon was attempting to handcuff him would not have believed that he was free to leave, the
court reasoned, Gilbert was in custody and sufficient evidence existed to support his conviction
for escape. See id.

 Extending the Gilbert court's reasoning, Gilbert would have apparently been in
"custody" at the moment the police officers approached his car and advised him to stop--even if
they only shouted the warning across a parking lot--since a reasonable person in that situation
would presumably not feel free to leave. However, this is precisely the type of situation
contemplated by the offense of evading arrest. See Tex. Penal Code Ann. § 38.04(a) (West
1994). (7) We decline to expand Harrell beyond its facts or follow the Morris plurality in borrowing
Fourth Amendment case law to define "custody" in the context of escape.

 We believe that a better analysis is found in Snabb v. State, 683 S.W.2d 850 (Tex.
App.--Corpus Christi 1984, no pet.). (8) In Snabb, an airport security officer saw the defendant,
whom he knew to be intoxicated, attempting to drive out of the parking lot. After pursuing Snabb
on foot, the officer and his partner succeeded in stopping her. The officer told Snabb that she was
under arrest and ordered her to gather her possessions, lock her car, and come with him. Snabb
refused to cooperate and ran away in disregard of his command to stop, but was quickly
apprehended. Based on this evidence, Snabb was convicted of escaping from the officer's custody
following arrest. See id. at 850-51.

 The court of appeals reversed, noting that "the offense of escape occurs after having
been arrested, not before the arrest is complete. Id. at 851 (emphasis original). The court cited
to Smith v. State, 219 S.W.2d 454 (Tex. Crim. App. 1949), which held:


An arrest of a person carries with it an element of detention, custody or control of
the accused. The mere fact that an officer makes the statement to an accused that
he is under arrest does not complete the arrest. There must be custody or detention
and submission to such arrest.



Id. at 456. Applying this standard, the court found that Snabb had not been arrested when she
fled. While she apparently committed the offense of evading arrest, she had not been charged with
that crime. Because the evidence was insufficient to show that Snabb had escaped from an arrest
or from custody, the court ordered her acquittal. See Snabb, 683 S.W.2d at 853.

 Two resisting arrest cases are also helpful to our determination of whether Medford
was arrested or in custody when he fled. In White v. State, 601 S.W.2d 364 (Tex. Crim. App.
1980), the arresting officer had drawn his pistol, placed the defendant in a spread-eagle position
against a horse trailer, and was preparing to handcuff him when White turned around and kicked
the officer in the groin. See id. at 365. The court affirmed White's conviction for resisting arrest
and noted that the arrest was taking place at the time of the appellant's action. See id. at 366. The
facts of Schrader v. State, 753 S.W.2d 733 (Tex. App.--Austin 1988, pet. ref'd) are similar. In
that case, two peace officers were preparing to arrest Schrader in a restaurant parking lot for
public intoxication after ejecting him from the restaurant. Schrader accompanied one officer to
a point near the restaurant while the other officer called to determine if there were any outstanding
warrants for Schrader's arrest. After learning that there was an outstanding arrest warrant, the
officer informed Schrader that he was under arrest and attempted to handcuff him. Schrader
resisted by hitting, kicking, and biting one of the officers in a brief struggle. See id. at 733-34.

 On appeal, Schrader argued that his assault on the officers while they were
attempting to handcuff him could not constitute resisting arrest because his arrest was complete
when he submitted to their authority in the parking lot. Instead, he claimed, the assault was an
attempt to escape from custody. See id. at 734. This Court rejected Schrader's attempt to define
the phrase "effecting an arrest" using Fourth Amendment standards. First, we noted the different
purposes behind the Fourth Amendment and the resisting arrest statute: the former was designed
to protect citizens' privacy interests, while the latter was enacted to protect police officers
attempting to carry out their duties. See id. While agreeing that Schrader's arrest was "complete"
with his detention in the parking lot, for some purposes of the law, we held that the officers were
still effecting his arrest when he assaulted them at the point near the restaurant. See id. at 737.

 At Medford's trial, there was some dispute about whether Officer Price had made
contact with appellant's arm when he attempted to handcuff him. Officer Price testified at the
suppression hearing that his right arm was free when he reached for the handcuffs with his left
hand; he described Medford as being "within touching distance" at the moment Medford fled. 
However, at trial he testified that his left hand was on Medford's left arm as he reached for his
handcuffs. Price further testified that as he grabbed Medford's left wrist in an attempt to secure
him, Medford "went down and lunged and ran south . . . ." This account of an actual touching
or grabbing differs from that given by Officer Baladez, who testified both at the suppression
hearing and at trial that Medford started to put his hands to his side (free of any touching) when
he fled, lunging between Baladez and the police car.

 Viewing this evidence in the light most favorable to the verdict, as we must, we
must accept as true Officer Price's testimony that he was touching Medford's wrist or arm just
before Medford fled. However, we cannot say that the State carried its burden of establishing that
Medford had been placed under restraint or taken into custody; by his own account, Officer Price
attempted to gain physical control of Medford but was unsuccessful. While Medford apparently
committed the offense of evading arrest, see Tex. Penal Code Ann. art 38.04 (West 1994) ("A
person commits an offense if he intentionally flees from a person he knows is a peace officer
attempting lawfully to arrest or detain him"), the State elected not to charge him with that offense. 
By its pleading charging Medford with escape, the State assumed the burden of proving a
completed arrest. Because the evidence viewed in a light most favorable to the prosecution shows
that Officer Price never succeeded in securing custody and control of appellant, the State did not
satisfy that burden. We find the evidence of escape legally insufficient and sustain appellant's
fourth point of error.


Jury Instructions on the Offense of Escape

 Having found the evidence of escape legally insufficient, we need not address the
remaining point of error. However, in the interest of judicial economy, we will address the final
point to avoid the potential of reconsidering the issue on remand. In his third point of error,
appellant argues that the trial court erred by providing improper definitions in the jury charge. 
At Medford's trial, the following definitions were included in the jury charge:


 "Escape" means unauthorized departure from custody. "Custody" means
under arrest by a peace officer. You are instructed that an arrest occurs when the
arrestee has been actually placed under restraint or taken into custody by a peace
officer; however, actual, physical, hands-on restraint is not a prerequisite to a
showing of custody in the context of the offense of Escape. Pursuant to our law,
a person is under arrest or in custody, for the purpose of the statutory offense of
Escape, if a reasonable person in the position of the arrestee would have believed
that he was not free to leave.



Defense counsel objected to the italicized portions of the jury instructions, arguing that under
Texas law, a person must be physically restrained or in custody to be "under arrest." The trial
court overruled appellant's objections.

 The trial court should provide the statutory definition for any term that is statutorily
defined. See Watson v. State, 548 S.W.2d 676, 679 n.3 (Tex. Crim. App. 1977); Nguyen v.
State, 811 S.W.2d 165, 167 (Tex. App.--Houston [1st Dist.] 1991, pet. ref'd). The unitalicized
text above consists of statutory definitions. The definitions of "custody" and "escape" are taken
from the definitions section of the chapter of the Penal Code in which the escape statute appears;
"arrest" is defined in article 15.22 of the Code of Criminal Procedure. See Tex. Penal Code Ann.
§ 38.01(1)(A), (2) (West Supp. 1998); Tex. Code Crim. Proc. Ann. art. 15.22 (West 1977). The
issue presented is whether the trial court erred by adding the italicized text in the jury instructions
on the offense of escape. See Tex. Penal Code Ann. § 38.06(a)(1) (West 1994).

 Appellant notes that the phrase "actual, physical, hands-on restraint is not a
prerequisite to a showing of custody in the context of the offense of escape" is derived from
Harrell v. State, 743 S.W.2d 229, 231 (Tex. Crim. App. 1988). As discussed above, Harrell is
not instructive on the facts of the present case because that case did not involve the issue of
whether an initial arrest was completed. Furthermore, we have observed that the term "custody"
in the escape context clearly implies a degree of physical limitation, restraint, or control. See
Lawhorn v. State, 843 S.W.2d 268, 270 (Tex. App.--Austin 1992), aff'd, 898 S.W.2d 886 (Tex.
Crim. App. 1995). We therefore hold that the above instruction was improper in the present case.

 We next examine the jury instruction that "a person is under arrest or in custody,
for the purpose of the statutory offense of Escape, if a reasonable person in the position of the
arrestee would have believed that he was not free to leave." As noted above, this instruction is
derived from the plurality opinion in Morris v. State, 739 S.W.2d 63 (Tex. Crim. App. 1987). 
We have rejected Morris's rule that Fourth Amendment "seizure" case law should govern the
definitions of "under arrest" and "custody" in the escape context. However, independent of this
analysis, we conclude that the instruction was erroneous. The Mendenhall rule, that a person has
been seized for Fourth Amendment purposes if a reasonable person in the position of the arrestee
would have believed that he was not free to leave, was modified by the United States Supreme
Court in California v. Hodari D., 499 U.S. 621 (1991). Hodari D. held that, in addition to the
above requirement, an arrest requires either the application of physical force or submission to a
show of authority. (9) See id. at 626. Since the jury instruction at issue in the present case was
based on Mendenhall and not Hodari D., there was error in that portion of the jury charge
regardless of whether we are correct in determining that Fourth Amendment law should not govern
the definitions of "in custody" and "under arrest" in the escape context.

 When error is preserved by proper objection to the court's charge, a reversal is
required upon a showing of some harm to the accused as a result of the error. See Almanza v.
State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). The instruction "actual,
physical, hands-on restraint is not a prerequisite to a showing of custody in the context of the
offense of escape" allowed the jury to convict upon a definition of custody that does not apply in
the context of an initial apprehension. Similarly, the Morris-Mendenhall instruction allowed the
jury to find that appellant was "in custody" if a reasonable person would have felt that he was not
free to leave; thus, the jury was permitted to find appellant guilty of escape without determining
that Officer Price had established control over him at the moment Medford fled, as Texas law
requires. Therefore, we cannot say that the errors in the jury charge were harmless. Finally, in
the event that Fourth Amendment seizure law is held to apply in the escape context, giving an
instruction based on Mendenhall was harmful because the jury was not required to find either the
additional facts of either (1) application of physical force or (2) submission to a show of authority,
as Hodari D. requires. Appellant's third point of error is sustained.


CONCLUSION

 We hold that the trial court properly refused to suppress evidence of the cocaine that
appellant claims was seized in violation of his constitutional rights, and we affirm appellant's
conviction for cocaine possession. However, we find the evidence legally insufficient to support
appellant's conviction for felony escape absent a showing that the arrest had been completed before
appellant fled. We reject the application of Harrell in the context of an initial apprehension. The
evidence shows that Medford was not in custody when he fled. Therefore, we reverse appellant's
conviction for escape and render a judgment of acquittal on that charge.

 In the interest of judicial economy, we have also addressed appellant's third point
of error and conclude that the jury was improperly instructed in this case because the jury charge
relied on the same propositions we rejected in sustaining appellant's legal sufficiency challenge.
However, the charge was also erroneous for the independent reason that Mendenhall, on which
a portion of the charge was based, was replaced by Hodari D. in determining what constitutes a
"seizure" for Fourth Amendment purposes. Should the Court of Criminal Appeals determine that
our disposition of the legal sufficiency point is erroneous, we would reverse and remand the cause
to the trial court for a new trial on the offense of escape because of the harm caused by the
erroneous jury instruction.



 

 Bea Ann Smith, Justice

Before Justices Jones, B. A. Smith and Yeakel

Affirmed in Part; Reversed and Rendered in Part

Filed: February 11, 1999

Publish

1. Tex. Penal Code Ann. § 12.42(a)(2), (d) (West Supp. 1998).
2. Officer Price testified that he was not familiar with Ricky Reed; his suspicion that appellant
might be Reed was based solely on the description provided by the arrest warrant.
3. Judge William Bender presided over the hearing on the motion to suppress, but Judge
Thomas Kenyon presided over appellant's trial.
4. The escape statute reads, in pertinent part: "A person commits the offense of escape if he
escapes from custody when he is . . . under arrest for, charged with, or convicted of an offense." 
Tex. Penal Code Ann. § 38.06(a)(1) (West 1994).
5. We observe that using the definitions from both the Penal Code and the Code of Criminal
Procedure results in somewhat circular reasoning: a person is in custody if he is under arrest or
under restraint, and a person has been placed under arrest if he has been placed under restraint or
taken into custody. Nevertheless, the Court of Criminal Appeals has employed article 15.22's
definition of arrest in the context of resisting arrest. See White v. State, 601 S.W.2d 364, 365
(Tex. Crim. App. 1980). As with escape, that offense is also subject to the definitions provided
in section 38.01. See Tex. Penal Code Ann. § 38.03 (West 1994).
6. The unfeasibility of the State's position is further demonstrated by the fact that a person
detained for investigation during a Terry stop may be "seized" for Fourth Amendment purposes
without having been arrested. A person in that position is therefore not in "custody" as defined
by section 38.01(1)(A). Tex. Penal Code Ann. § 38.01(1)(A) (West Supp. 1998).
7. That section provides: "A person commits an offense if he intentionally flees from a person
he knows is a peace officer attempting lawfully to arrest or detain him." Id.
8. We recognize that the Corpus Christi Court of Appeals expressly overruled Snabb in
Johnson v. State, 838 S.W.2d 906 (Tex. App.--Corpus Christi 1992, pet. ref'd), cited above. 
However, the Johnson court did so after the Morris plurality disavowed Snabb in a footnote. See
Johnson, 838 S.W.2d at 908; Morris, 739 S.W.2d at 64 n.2. Johnson also followed Morris in
using the Mendenhall test to define the point of arrest for escape purposes. See Johnson, 838
S.W.2d at 907-08. Because we reject this approach, we believe that the Snabb analysis remains
correct.
9. The Texas Court of Criminal Appeals adopted Hodari D. in Johnson v. State, 912 S.W.2d
227 (Tex. Crim. App. 1995), and determined that the Texas Constitution does not extend beyond
the federal seizure standard in that context.


showing that the arrest had been completed before
appellant fled. We reject the application of Harrell in the context of an initial apprehension. The
evidence shows that Medford was not in custody when he fled. Therefore, we reverse appellant's
conviction for escape and render a judgment of acquittal on that charge.

 In the interest of judicial economy, we have also addressed appellant's third point
of error and conclude that the jury was improperly instructed in this case because the jury charge
relied on the same propositions we rejected in sustaining appellant's legal sufficiency challenge.
However, the charge was also erroneous for the independent reason that Mendenhall, on which
a portion of the charge was based, was replace