In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-04-00157-CR
______________________________


MARIO ANTHONY GAMBOA, Appellant
Â 
V.
Â 
THE STATE OF TEXAS, Appellee


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

On Appeal from the 71st Judicial District Court
Harrison County, Texas
Trial Court No. 04-0237X


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Carter


MEMORANDUM OPINION

Â Â Â Â Â Â Â Â Â Â Â Â Mario Anthony Gamboa appeals his conviction by a jury for two separate
indictmentsâescape and aggravated assault on a public servant. The cases were tried together.
Because a deadly weapon was used or exhibited in the commission of both offenses, both offenses
were first-degree felonies. See Tex. Pen. Code Ann. Â§Â§ 22.02(a), 38.06(e) (Vernon 2003 & Supp.
2004â2005). Gamboa has appealed both convictions. Gamboa has raised identical issues in both
appeals and briefed both appeals together.


 Since the two cases have identical issues, we will discuss
both in this opinion. The jury assessed Gamboa's punishment at thirty years' imprisonment for the
escape, and thirty-five years for the aggravated assault. The trial court sentenced Gamboa consistent
with the jury's verdict.


 On appeal, Gamboa argues that the evidence is legally and factually
insufficient and that he received ineffective assistance of counsel. We affirm the judgment of the
trial court.
Â Â Â Â Â Â Â Â Â Â Â Â After being arrested for possession of a controlled substance, Gamboa agreed to cooperate
with the Northeast Texas Narcotics Task Force, a combination of agencies working to suppress
narcotics crime in Northeast Texas, including officers from Panola County. At the time, Gamboa
was in the custody of Panola County. Gamboa was transported to Texarkana, Texas, to aid the
officers in their investigation. While being transported back to the Panola County Jail, Gamboa
escaped from custody in Harrison County, using a sharp unidentified object. In the process, Gamboa
cut the hand of Sergeant Chad Taylor, a police officer with the City of Carthage. Eventually, the
police apprehended Gamboa while he was attempting to cross the Sabine River. 
The Evidence Is Legally and Factually Sufficient
Â Â Â Â Â Â Â Â Â Â Â Â In his first two points of error, Gamboa challenges the legal and factual sufficiency of the
evidence. According to Gamboa, the evidence clearly established that the weapon used in the escape
to assault the police officer was a fingernail clipper. Gamboa contends that no rational juror could
have concluded that a fingernail clipper is a deadly weapon. 
Â Â Â Â Â Â Â Â Â Â Â Â In our review of the legal sufficiency of the evidence, we employ the standards set forth in
Jackson v. Virginia, 443 U.S. 307, 319 (1979). This calls on the court to view the relevant evidence
in the light most favorable to the verdict and determine whether any rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt. Johnson v. State, 23 S.W.3dÂ 1,
7 (Tex. Crim. App. 2000). In our review, we must evaluate all of the evidence in the record, both
direct and circumstantial, whether admissible or inadmissible. Dewberry v. State, 4 S.W.3d 735, 740
(Tex. Crim. App. 1999). 
Â Â Â Â Â Â Â Â Â Â Â Â When reviewing a challenge to the factual sufficiency of the evidence to support the
conviction, we are required to determine whether, considering all the evidence in a neutral light, the
jury was rationally justified in finding guilt beyond a reasonable doubt. Zuniga v. State, 144 S.W.3d
477, 484 (Tex. Crim. App. 2004). There are two ways in which we may find the evidence to be
factually insufficient. Id. First, if the evidence supporting the verdict, considered alone, is too weak
to support the jury's finding of guilt beyond a reasonable doubt, then we must find the evidence
insufficient. Id. Second, ifâwhen we weigh the evidence supporting and contravening the
convictionâwe conclude that the contrary evidence is strong enough that the State could not have
met its burden of proof, we must find the evidence insufficient. Id. at 484â85. "Stated another way,
evidence supporting guilt can 'outweigh' the contrary proof and still be factually insufficient under
a beyond-a-reasonable-doubt standard." Id. at 485. 
Â Â Â Â Â Â Â Â Â Â Â Â To convict Gamboa of escape, the State was required to prove Gamboa escaped from custody
after having been arrested for, charged with, or convicted of an offense. See Tex. Pen. Code Ann.
Â§Â 38.06(a) (Vernon 2003); Scott v. State, 672 S.W.2d 465, 466 (Tex. Crim. App. 1984). Escape is
defined as an "unauthorized departure from custody." Lawhorn v. State, 898 S.W.2d 886, 890 (Tex.
Crim. App. 1995). Custody, in the context of escape, implies a degree of physical limitation,
restraint, or control that a reasonable person, under the circumstances, would have believed he or she
was not free to leave. See Morris v. State, 739 S.W.2d 63, 66 (Tex. Crim. App. 1987). Escape is
a felony of the first degree if the actor "uses or threatens to use a deadly weapon." Tex. Pen. Code
Ann. Â§Â 38.06(e)(2) (Vernon 2003). 
Â Â Â Â Â Â Â Â Â Â Â Â The State's theory of the charge for aggravated assault was that Gamboa used or exhibited
a deadly weapon while intentionally, knowingly, or recklessly causing bodily injury to Taylor and
that Taylor was a public servant who was lawfully discharging his duties at the time of that assault. 
See Tex. Pen. Code Ann. Â§Â§ 22.01â.02 (Vernon Supp. 2004â2005). The offense of aggravated
assault on a public servant is a first-degree felony. See Tex. Pen. Code Ann. Â§ 22.02(b)(2). 
Â Â Â Â Â Â Â Â Â Â Â Â Gamboa's argument focuses on whether the evidence is sufficient to show he used a deadly
weapon. The Texas Penal Code defines the term "deadly weapon" as follows:
(A) a firearm or anything manifestly designed, made, or adapted for the
purpose of inflicting death or serious bodily injury; or
(B) anything that in the manner of its use or intended use is capable of
causing death or serious bodily injury.

Tex. Pen. Code Ann. Â§ 1.07(a)(17) (Vernon Supp. 2004â2005). Section 1.07 does not require that
the actor actually intend death or serious bodily injury; an object is a deadly weapon if the actor
intends a use of the object in which it would be capable of causing death or serious bodily injury. 
McCain v. State, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000). 
Â Â Â Â Â Â Â Â Â Â Â Â Taylor testified that, while he was driving the vehicle in which Gamboa was being
transported, he observed Gamboa fidgeting with something in his right hand beside his leg. Because
Gamboa had "showed total cooperation" until this point, Taylor had not handcuffed Gamboa. Soon
thereafter, Gamboa lifted up his hand, in which he held a sharp object resembling a knife, and
ordered Taylor to pull over. Taylor could only see the tip, but testified that the object "[l]ooked like
a knife." When Taylor refused to pull over, Gamboa lunged out of his seat and thrust the object at
Taylor's throat and face. Although Taylor blocked the thrust, he received a cut from the object
requiring closure with stitches. The injury squirted blood onto the driver's side door, dashboard, and
even onto the passenger door of the vehicle. Taylor testified the object was a very sharp metallic
object and could easily have killed a person if it had hit the jugular vein. 
Â Â Â Â Â Â Â Â Â Â Â Â Gamboa and Taylor then struggled over control of the steering wheel, causing Taylor to lose
control of the vehicle, which then went into a skid. While the vehicle was skidding sideways down
the highway, Gamboa opened a door and fled. Gamboa then ran into the woods and disappeared into
the swampy undergrowth. Taylor testified that there was no question Gamboa was still in custody
and that the investigation into his prior offense was still ongoing. Gamboa knew he was being
transported back to the Panola County Jail. Taylor testified he never gave Gamboa permission to
leave. 
Â Â Â Â Â Â Â Â Â Â Â Â The police pursued Gamboa on foot and searched for him with dogs and a helicopter. In
addition, several boats were sent to patrol along the Sabine River. Eventually, several police officers
and a game warden apprehended Gamboa while he was attempting to cross the Sabine River. After
receiving Miranda


 warnings, Gamboa made a statement in which he admitted escaping from
custody. A videotape of the statement was introduced into evidence. 
Â Â Â Â Â Â Â Â Â Â Â Â The jury was presented with three alternative theories as to what Gamboa used as a deadly
weapon.


 The indictment in this case alleged Gamboa used or exhibited one of the following deadly
weapons: a knife, a fingernail file, or an unknown object. The indictment in the companion case
alleged Gamboa committed either attempted capital murder or aggravated assault on a public servant
and used or exhibited one of the following deadly weapons: a knife, a fingernail file, or an unknown
object. The jury found that Gamboa committed escape and aggravated assault on a public servant
while exhibiting a deadly weapon, to-wit, an unknown object. 
Â Â Â Â Â Â Â Â Â Â Â Â Viewed in a light most favorable to the prosecution, a rational juror could have found all the
essential elements of both offenses beyond a reasonable doubt. Based on Taylor's testimony, a
rational juror could have found that Gamboa intentionally, knowingly, or recklessly caused bodily
injury by cutting Taylor's hand with an unknown object. Further, a rational juror could have
concluded that the object was used in a manner capable of causing death or serious bodily injury. 
Â Â Â Â Â Â Â Â Â Â Â Â When viewed in a neutral light, the evidence supporting the verdict, considered alone, is not
too weak to support the jury's finding of guilt beyond a reasonable doubt. After weighing the
evidence supporting and contravening the conviction, the contrary evidence is not strong enough that
the State could not have met its burden of proof. The evidence is factually sufficient. Although the
record contains some evidence that the deadly weapon was a fingernail file or clipper which was not
sharp, the contrary evidence is not so strong that a rational juror could not have concluded that
Gamboa used an unknown object in a manner capable of causing death or serious bodily injury.
Â Â Â Â Â Â Â Â Â Â Â Â In his statement, Gamboa stated the weapon he used was a fingernail file. Gamboa stated
that he intended the victim to think he had a knife, but that the fingernail file could not have harmed
anyone. The police found a manicure set in the car, which was missing a piece. Gamboa introduced
a fingernail clipper produced by the same company and alleged it was identical to the missing piece
of the manicure set. Taylor testified the fingernail clipper "fits the description" of the object he
observed, but was not sure if it was the object used. Taylor admitted the fingernail clipper
introduced by Gamboa did not have a sharp point. 
Â Â Â Â Â Â Â Â Â Â Â Â However, the jury could have reasonably concluded, and apparently did conclude, that the
fingernail clipper presented by Gamboa was not equivalent to the weapon used in the escape. The
actual weapon used in the escape was not discovered. The jury concluded that an unknown object
was used in the offense. Taylor testified the object used by Gamboa was very sharp, and a
photograph of his injured hand with several stitches was introduced into evidence. Based on Taylor's
testimony and the other evidence at trial, the jury could have reasonably concluded that Gamboa used
an object other than a fingernail file or clipper or that the fingernail file or clipper had been modified.
Â Â Â Â Â Â Â Â Â Â Â Â The jury was entitled to believe Taylor's testimony that the weapon was sharp and capable
of causing a person's death over Gamboa's testimony that the weapon was only a fingernail file and
could not have harmed anyone. The jury may resolve or reconcile conflicts in the testimony,
accepting or rejecting such portions as it sees fit. Banks v. State, 510 S.W.2d 592, 595 (Tex. Crim.
App. 1974). The jury is the sole judge of the weight and credibility of the witnesses' testimony and
may accept or reject any or all testimony of any witness. See Heiselbetz v. State, 906 S.W.2d 500,
504 (Tex. Crim. App. 1995). When viewed in a neutral light, the evidence that the weapon was a
harmless fingernail clipper is not so strong that the State could not have met its burden of proof that
Gamboa used an unknown object in a manner capable of causing death or serious bodily injury. The
evidence supporting the remaining elements of both offenses is factually sufficient. Because the
evidence is legally and factually sufficient, we overrule Gamboa's first two points of error.
Gamboa Has Not Shown He Received Ineffective Assistance of Counsel
Â Â Â Â Â Â Â Â Â Â Â Â In his remaining point of error, Gamboa argues he received ineffective assistance of counsel. 
Gamboa alleges his trial counsel only discussed the case with him twice.


 In addition, Gamboa
argues his trial counsel failed to obtain rulings on a written motion for continuance, a motion to
proceed pro se, and a motion to change venue.
Â Â Â Â Â Â Â Â Â Â Â Â Both the Sixth Amendment and the Texas Constitution confer a right to effective
representation by counsel. U.S. Const. amend. VI; Tex. Const. art. I, Â§ 10. If counsel's
performance is ineffective, the conviction cannot stand. The Texas Court of Criminal Appeals has
held that the Texas Constitution does not impose a higher standard than the Sixth Amendment. 
Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994); Hernandez v. State, 726 S.W.2d 53,
56â57 (Tex. Crim. App. 1986). The Sixth Amendment standard, established by Strickland, requires
a defendant alleging ineffective assistance of counsel to show that his or her counsel's performance
at trial was deficient and that counsel's deficient performance prejudiced his or her defense. See
Strickland v. Washington, 466 U.S. 668 (1984); see also Bone v. State, 77 S.W.3d 828, 833 (Tex.
Crim. App. 2002). An ineffective assistance of counsel claim cannot be based on a difference of
opinion concerning strategy. "[T]he defendant must prove, by a preponderance of the evidence, that
there is . . . no plausible professional reason for a specific act or omission." Bone, 77 S.W.3d at 836.
Â Â Â Â Â Â Â Â Â Â Â Â To satisfy the deficiency prong of the test, Gamboa must prove by a preponderance of the
evidence that his counsel's representation fell below the objective standard of professional norms.
Id. Our review of counsel's representation is highly deferential, and we indulge a strong presumption
that counsel's conduct falls within a wide range of reasonable representation. Strickland, 466 U.S.
at 689; Bone, 77 S.W.3d at 836; Tong v. State, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). An
appellate court should not "conclude the challenged conduct constituted deficient performance unless
the conduct was so outrageous that no competent attorney would have engaged in it." Garcia v.
State, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001); see Goodspeed, 2005 Tex. Crim. App. LEXIS
520, at *5. 
Â Â Â Â Â Â Â Â Â Â Â Â On or about October 12, 2004, Gamboa's trial counsel filed a document titled Notice of
Substitution of Counsel. In this document, Gamboa's trial counsel stated that Gamboa desired to
represent himself pro se or retain other counsel. Accompanying this motion was a motion for
continuance and a motion to change venue. All three documents were signed by Gamboa with the
notation that Gamboa would substitute as pro se counsel for himself or retain other counsel. The
motion to change venue and Notice of Substitution of Counsel contain Gamboa's trial counsel's
signature, but the motion for continuance does not. The record does not indicate whether a ruling
was sought concerning these motions. Gamboa argues his trial counsel was ineffective for not
obtaining a ruling on these motions.
Â Â Â Â Â Â Â Â Â Â Â Â Counsel's reasons for not seeking a ruling on the motions are not in the record. "If counsel's
reasons for his conduct do not appear in the record and there is at least the possibility that the
conduct could have been legitimate trial strategy, we will defer to counsel's decisions and deny relief
on an ineffective assistance claim on direct appeal." Ortiz v. State, 93 S.W.3d 79, 88â89 (Tex. Crim.
App. 2002); see Murphy v. State, 112 S.W.3d 592, 601 (Tex. Crim. App. 2003). First, it is entirely
possible Gamboa determined after filing the motions that he did not desire to represent himself
proÂ se or obtain retained counsel. Further, the record contains no waiver of the constitutional right
to counsel. An indigent party's right to counsel does not compel the trial court to appoint counsel
agreeable to the indigent party. See King v. State, 29 S.W.3d 556, 566 (Tex. Crim. App. 2000);
Garner v. State, 864 S.W.2d 92, 98 (Tex. App.âHouston [1st Dist.] 1993, pet. ref'd). The decision
not to seek a change of venue could have been based on trial strategy. Because counsel's reasons for
failing to obtain a ruling on these motions do not appear in the record and there are strategic reasons
for not obtaining a ruling, we will defer to trial counsel's decisions.
Â Â Â Â Â Â Â Â Â Â Â Â Gamboa's attorney performed proficient cross-examinations, presented several theories in
defense of Gamboa, and managed to get portions of the videotaped statement excluded from the
evidence based on being more prejudicial than probative. Trial counsel's opening and closing
statements were adequate. Under the totality of the circumstances, Gamboa has not shown that his
trial counsel's performance was deficient.
Â Â Â Â Â Â Â Â Â Â Â Â Further, Gamboa has failed to satisfy the second prong of Strickland. A defendant does not
meet his or her burden by merely showing that an error had some conceivable effect on the outcome
of the trial. Strickland, 466 U.S. at 693. The defendant must show a "reasonable probability" that,
but for the error, the result of the trial would have been different. Id. at 694. "A reasonable
probability is a probability sufficient to undermine confidence in the outcome." Thompson,
9Â S.W.3d at 812. Gamboa has not demonstrated that the probability of a different result is sufficient
to undermine confidence in the outcome. Because Gamboa has failed to show that his trial counsel's
performance was deficient or a reasonable probability of a different result, we overrule Gamboa's
remaining point of error.
Conclusion
Â Â Â Â Â Â Â Â Â Â Â Â The evidence is legally and factually sufficient. Viewed in a light most favorable to the State,
a rational juror could have found Gamboa guilty beyond a reasonable doubt. When viewed in a
neutral light, the evidence supporting the verdict, considered alone, is not too weak to support the
jury's finding of guilt beyond a reasonable doubt. Further, the contrary evidence is not so strong that
the State could not have met its burden of proof. Last, Gamboa has not shown he received
ineffective assistance of counsel.
Â Â Â Â Â Â Â Â Â Â Â Â We affirm the judgment of the trial court.




Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Jack Carter
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice
Â 
Date Submitted:Â Â Â Â Â Â Â Â Â Â August 23, 2005
Date Decided:Â Â Â Â Â Â Â Â Â Â Â Â Â August 24, 2005

Do Not Publish



-justify:inter-ideograph;
mso-pagination:widow-orphan;tab-stops:center 3.25in'>   Memorandum Opinion by Chief Justice Morriss








Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  MEMORANDUM OPINION

Â 

Â Â Â Â Â Â Â Â Â Â Â  Reginald
Ronard Hall appeals from his jury convictions for two counts of delivery of a
controlled substance in a drug-free zone.Â 
Hall was sentenced as a repeat offender to twenty yearsÂ imprisonment on
the first count and to ten yearsÂ imprisonment on the second count, with the
sentences to run concurrently.Â  He was
represented by appointed counsel at trial and on appeal.

Â Â Â Â Â Â Â Â Â Â Â  HallÂs
attorney has filed a brief which discusses the record and reviews the
proceedings.Â  Counsel has thus provided a
professional evaluation of the record demonstrating why, in effect, there are
no arguable grounds to be advanced.Â  This
meets the requirements of Anders v.
California, 386 U.S. 738 (1967); Stafford
v. State, 813 S.W.2d 503 (Tex. Crim. App. 1981); and High v. State, 573 S.W.2d 807 (Tex. Crim. App. [Panel Op.] 1978).

Â Â Â Â Â Â Â Â Â Â Â  Counsel mailed
a copy of the brief to Hall November 25, 2009, informing Hall of his right to
file a pro se response and of his right to review the record.Â  Counsel has also filed a motion with this
Court seeking to withdraw as counsel in this appeal.Â  Hall has neither filed a pro se response nor
requested an extension of time in which to file such response.

Â Â Â Â Â Â Â Â Â Â Â  We have
determined that this appeal is wholly frivolous.Â  We have independently reviewed the clerkÂs
record and the reporterÂs record, and we agree that no arguable issues support
an appeal.Â  See Bledsoe v. State, 178 S.W.3d 824, 826Â27 (Tex. Crim. App.
2005).Â  

Â Â Â Â Â Â Â Â Â Â Â  We do note,
however, that the trial courtÂs judgment on count two in this case indicates
the degree of the offense is a second-degree felony.Â  The offense for count two is a third-degree
felony.Â  See Tex. Health & Safety
Code Ann. Â§ 481.134(d) (Vernon Supp. 2009).Â  The punishment range was correctly enhanced
to that of a second-degree felony.Â  See Tex.
Penal Code Ann. Â§ 12.42(a)(3) (Vernon Supp. 2009).Â  This Court has the authority to modify the
judgment to make the record speak the truth when the matter has been called to
our attention by any source.Â  French v. State, 830 S.W.2d 607 (Tex.
Crim. App. 1992).Â  In Asberry v. State, 813 S.W.2d 526 (Tex.
App.ÂDallas 1991, pet. refÂd), the court noted that the authority of the
appellate court to modify incorrect judgments is not dependent on request of
any party; the appellate court may act sua sponte.Â  The Texas Rules of Appellate Procedure
provide direct authority for this Court to modify the judgment of the trial
court.Â  Tex.
R. App. P. 43.2.Â  We modify the
judgment to reflect the correct degree of offense as that of a third-degree
felony.

Â Â Â Â Â Â Â Â Â Â Â  In a
frivolous appeal situation, we are to determine whether the appeal is without
merit and is frivolous, and if so, the appeal must be dismissed or
affirmed.Â  See Anders, 386 U.S. 738.

Â 

Â 

Â 

Â 

Â 

Â 

Â 

Â 

Â 

Â 

Â 

Â 

Â 

Â 

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â  As
modified, we affirm the judgment of the trial court.[1]

Â 

Â 

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â  Â  Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Josh
R. Morriss, III

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Chief
Justice

Â 

Date Submitted:Â Â Â Â Â Â Â Â Â  February
11, 2010

Date Decided:Â Â Â Â Â Â Â Â Â Â Â Â  February
23, 2010

Â 

Do Not PublishÂ Â Â Â Â Â Â Â Â Â  

Â 

Â 

Â 

Â 











[1]Since
we agree this case presents no reversible error, we also, in accordance with Anders, grant counselÂs request to
withdraw from further representation of Hall in this case.Â  No substitute counsel will be appointed.Â  Should Hall wish to seek further review of
this case by the Texas Court of Criminal Appeals, Hall must either retain an
attorney to file a petition for discretionary review or Hall must file a pro se
petition for discretionary review.Â  Any
petition for discretionary review must be filed within thirty days from the
date of either this opinion or the last timely motion for rehearing that was
overruled by this Court.Â  See Tex.
R. App. P. 68.2.Â  Any petition for
discretionary review must be filed with this Court, after which it will be
forwarded to the Texas Court of Criminal Appeals along with the rest of the
filings in this case.Â  See Tex.
R. App. P. 68.3.Â  Any petition for
discretionary review should comply with the requirements of Rule 68.4 of the
Texas Rules of Appellate Procedure.Â  See Tex.
R. App. P. 68.4.